SAMUEL C. DAVIS ET AL., Respondents, *v.* WABASH, ST. LOUIS AND PACIFIC RAILWAY COMPANY, Appellant.

### March 27, 1883.

1. PRACTICE — INSTRUCTIONS. — That an instruction assumes as true a fact which has been proved by the undisputed testimony of witnesses of both parties is not ground for a reversal of the judgment.

2. —— It is not error to instruct the jury that an affirmative fact which is indispensable to the defence should be " established by a fair preponderance of evidence."

3. CARRIERS — VIS MAJOR — PRESUMPTIONS OF NEGLIGENCE. — In an action against a carrier for loss of goods, if the plaintiff shows loss and a *vis major* sufficient to account for the loss, there is no presumption that the negligence of the carrier was the proximate cause of the loss.

4. —— Where there is evidence of a *vis major* and of concurring negligence of the carrier, the question is for the jury; to determine, by the preponderance of the evidence, which is the proximate cause of the loss.

5. MEASURE OF DAMAGES. — The measure of damage for loss of goods by a carrier is the market value of the goods at the place to which they are consigned.

6. PRACTICE — EVIDENCE. — The order in which evidence shall be introduced is discretionary with the trial court, and unless there is a flagrant abuse of discretion, the admission of evidence in rebuttal which might properly have been given in chief, is not ground for a reversal of the judgment.

APPEAL from the St. Louis Circuit Court, ADAMS, J.

*Affirmed.*

WILLIAM BROWN and BLODGETT & DICKSON, for the appellant: It thus appearing, from the plaintiffs' evidence, that the injury complained of was the result of the " act of God," as the proximate cause, the defendant was entitled to a verdict. — 2 Thomp. on Neg. 1227, note 2 ; *Harris* v. *Packwood*, 3 Taunt. 264 ; *Beardslee* v. *Richardson.* 11 Wend. 26; *Browne* v. *Johnson*, 29 Texas, 43 ; *Larnt* v. *Railroad Co.*, 46 N. Y. 271 ; *Jackson* v. *Railroad Co.*, 23 Cal. 268 ; Whart. on Neg., sects. 129, 661 ; *Livzey* v. *Philadelphia*, 64 Pa. St. 106. The court below improp-

erly permitted the plaintiffs to introduce in rebuttal evidence which should have been introduced in chief. — *Babcock* v. *Babcock*, 46 Mo. 247 ; 1 Greenl. on Ev., chap. 3, sect. 74 ; *Chillicothe R. & B. Co.* v. *Jameson*, 48 Ill. 281. In determining whether there was danger, the railroad company is held only to that degree of judgment which characterizes the ordinarily prudent man. — *Mascheck* v. *St. Louis R. Co.*, 3 Mo. App. 600 ; *Washington Mutual Fire Ins. Co.* v. *St. Mary's Seminary*, 52 Mo. 480 ; *Peck* v. *Ritchey*, 66 Mo. 121 ; *Wolcott* v. *Heath*, 78 Ill. 433 ; *Straus* v. *Minzesheimer*, 78 Ill. 492 ; *Olson* v. *Upsahl*, 69 Ill. 273 ; *Roach* v. *The People*, 77 Ill. 25 ; *Wilson* v. *Bauman*, 80 Ill. 493. The second instruction does not properly discriminate between the conclusions of law and inferences of fact which may be drawn from given facts, and was, therefore, misleading. — *The State* v. *Laurie*, 1 Mo. App. 376 ; *Clarke* v. *Kitchen*, 52 Mo. 317 ; *Young* v. *Ridenbaugh*, 67 Mo. 384 ; *Guardian Life Ins. Co.* v. *Hogan*, 80 Ill. 35. In civil cases the law does not require a party " to establish " his case or defence by a clear or " fair " or any quality of preponderance of evidence. It is sufficient if the evidence preponderate ever so slightly in his favor. — *Dyer* v. *Bannock*, 2 Mo. App. 432 ; *Ellis* v. *McPike*, 50 Mo. 575 ; *Clarke* v. *Kitchen*, 52 Mo. 317 ; *Ruff* v. *Jarnett*, 94 Ill. 475 ; *Stratton* v. *Railway Co.*, 95 Ill. 25 ; *Bitter* v. *Saathoff*, 98 Ill. 266. If it appears in the evidence of plaintiffs that the injury resulted from an extraordinary flood, the burden remains on plaintiffs to show by a preponderance of evidence that such flood was a remote, rather than the proximate, cause. — *Gillespie* v. *Railway Co.*, 6 Mo. App. 558 ; *Railroad Co.* v. *Reeves*, 10 Wall. 176 ; *Transportation Co.* v. *Donner*, 11 Wall. 129 ; *Wilson* v. *Railroad Co.*, 11 Reporter, 302. The evidence of plaintiffs shows that the goods were injured by a sudden, violent, and extraordinary flood ; in such case no inference of negligence can be drawn from the fact of loss, and the burden is on the plaintiffs to prove it. —

*Wilson* v. *S. P. R. Co.*, 11 Reporter, 302; *Clark* v. *Barnwell*, 12 How. 272; *Scott* v. *London Dock Co.*, 3 Hurl. & Colt. 596.   It is error to instruct the jury what any given evidence establishes, or to direct them to a consideration of a particular part of the evidence to the exclusion of others. — *Koenig* v. *Life Association*, 3 Mo. App. 596; *Chappel* v. *Allen*, 38 Mo. 222; *Raysdon* v. *Trumbo*, 52 Mo. 38; *Ellis* v. *McPike*, 50 Mo. 575; *First National Bank of Warsaw* v. *Currie*, 44 Mo. 92; *Iron Mountain Bank* v. *Armstrong*, 62 Mo. 73; *Ogden* v. *Kirby*, 79 Ill. 555.

NOBLE & ORRICK, for the respondents: The instructions given by the court below declare the law most favorably for the appellant, upon all questions presented at the trial. — *Pruit* v. *Railroad Co.*, 62 Mo. 527; *Vail* v. *Railroad Co.*, 63 Mo. 230; *Wolf* v. *Express Co.*, 39 Mo. 421; *Hill* v. *Shurgen*, 28 Mo. 323.   When the damage to respondents' goods in appellant's possession as a common carrier was proved, the burden was then on appellant to show that the damage was occasioned by a cause exempting it from liability. — *Wolf* v. *Express Co.*, 43 Mo. 421; *Levering* v. *Insurance Co.*, 42 Mo. 88; *Daggett* v. *Shaw*, 3 Mo. 264; *Reed* v. *Railroad Co.*, 60 Mo. 199.

BAKEWELL, J., delivered the opinion of the court.

Plaintiffs are co-partners, doing business in St. Louis. Defendant is a common carrier between Toledo and East St. Louis; and, together with the Lake Shore and New York, and Lake Erie and Western Railways, formed a line of connecting roads, over which the business of a fast freight transportation company called the South Shore Line, carried goods.

On February 5, 1881, this South Shore Line contracted with plaintiffs to transport for them from New York to East St. Louis, certain silks and other dry goods, valued at about $10,000.   Under this agreement the South Shore

Line received the goods; and, under its agreement with defendant, for its share of the freight money, delivered this merchandise to defendant at Toledo, on February 11, 1881, for transportation to East St. Louis over defendant's road. Defendant received this merchandise at the date named, in good order, and contracted with the South Shore Line and defendants to deliver the goods, in good order, and without delay, to plaintiffs. The merchandise arrived in St. Louis on February 23, 1881, in a damaged condition. As to these allegations of the petition, there is no serious contest. The petition further alleges, that the goods were damaged to the amount of $6,184.29 by the negligence of defendant. There was a general denial. The verdict and judgment were for plaintiffs, for the amount claimed.

There is no question that the goods were damaged whilst in defendant's possession; but defendant contends that this was caused by the act of God, for which they are not liable.

The evidence is voluminous, and is contradictory. That the goods were injured by water, after they were loaded into defendant's car in the transfer house at Toledo (at which place the Lake Shore road and the defendant exchange freight), owing to an extraordinary flood in the Maumee River at that point, is plain from the testimony of all the witnesses. We are not concerned with the weight of the evidence. If there is substantial evidence of negligence on the part of defendant directly contributing to the injury, it is quite immaterial that there is a great deal of testimony to the effect that, by no diligence, could defendant have foreseen or avoided the mischief.

There was evidence tending to show that the Lake Shore track and the track of defendant's road are separated at the transfer house in Toledo by a common platform. The house is long enough to accommodate sixteen cars. The house stands upon what is called the Middle Ground.

The locality was once a swamp.   The house is higher than houses in the vicinity, and is safe from any ordinary rise of the river.

The Maumee River at Toledo is almost at a level with Lake Erie, and has hardly any current.   High winds from the lake raise the water.   On February 11th, the water rose higher than it had ever been known to rise since 1867. The overflow was owing to the breaking of a gorge of ice, combined with a high wind from the lake.   The winter had been unusually severe, and the lake was frozen out to a distance of six miles.   The ice in the river was unusually thick.   A thaw had set in early in February, accompanied by unusual rains.   These rains caused a violent break-up. The ice began to move about the 8th.   On the 9th the gorge moved, and there was another gorge.   Great anxiety was felt in Toledo.   Railroad men and merchants of experience went up the river to examine the gorge.   Merchants were notified that one of the heaviest floods ever known in that locality was impending, and defendant notified persons in Toledo having freight in the freight houses of defendant, to remove their goods out of the reach of danger.   This freight was in the Middle Ground, and was removed.   The Lake Shore road employed an extra force of men, and removed from the Middle Ground all freight under its charge.   Defendant also set to work removing freight, but it employed no extra force to do so.   By moving the cars half a mile west, to higher ground, the freight would have been out of danger from the flood.

The goods of plaintiffs arrived at Toledo and were delivered to defendant early on the morning of the 11th.   Early in the afternoon of that day, defendant receipted for these goods, and before eight o'clock in the evening they were all loaded into one of defendant's cars in the transfer house. The ordinary course of business was to send loaded cars to St. Louis by the six or nine o'clock evening trains.   But the switch engine was on hand usually until eleven o'clock,

to draw loaded cars out of the transfer house. The men working there usually quit work at eleven o'clock at night; and they did so on this occasion. There is evidence that, up to that time, there was no water in the transfer house that would have interfered with pulling out the cars. Nine cars had been loaded for defendant in the transfer house up to eleven o'clock. There was no switch engine on hand to pull them out. During the same period the Lake Shore road loaded eleven of its cars on the Middle Ground, and got them out before the flood came at midnight. The man who had charge of the transfer of merchandise for defendant, testifies that all the cars in the transfer house were loaded when he quit work at eleven; that there was no water there then; and that they could then have been pulled out by a switch engine; and that, at ten o'clock, he heard that the ice had broken and the flood was coming. No west-bound freight was moved after twelve o'clock of that day. The tracks west of the transfer house were clear when this man left. There was no engine waiting to pull out the cars when the men quit work. The switch engine usually came round for that purpose at six, or at seven, or when the men got through. The engines were usually on hand at eleven. If the orders had been given, the cars could have been pulled out on the high ground, out of danger.

This statement is not made as a fair summary of the three hundred pages of evidence. It is made merely to meet the objection that there was no substantial evidence of negligence to go to the jury. A great deal of testimony highly favorable to defendants was introduced, which we need not regard, for the purposes of this appeal.

It is not the rule in Missouri that, because the carrier has shown that the loss came from the act of God, he is thereby altogether discharged from any necessity of showing affirmatively that he has been guilty of no negligence. In an action against a common carrier for damage to

goods in his custody, plaintiff makes out his case by proving delivery and loss. If it further appears that the loss was occasioned by an excepted cause, as the act of God, then, if nothing further appears, there is nothing shown to make the carrier liable. He need not show that the cause was one that releases him, and then go on to show that he did nothing to contribute to it; but, if it further appears in the case that the danger might have been avoided by the exercise of skill and caution reasonably adapted to the circumstances, then defendant must show that he exercised such reasonable skill and precautions as a prudent person under the circumstances would have employed. The proximate, and not the remote, cause of the disaster is to be looked to. When the carrier has shown loss by flood or storm, he brings himself within the line of excepted risks. If it appears that the damage resulted immediately from this cause, the carrier is excused. But, though the goods were injured by the act of God, if the immediate cause of the injury was the negligence of the carrier, the act of God does not then excuse him, for the act of God is, then, the remote cause. We do not see that *Railroad Company* v. *Reeves* (10 Wall. 176), to which we are referred, is at variance with the Missouri cases in this respect. To excuse the carrier, the act of God must be the cause of the loss in such a sense that the negligence of the carrier is not a co-operative cause. If the injury might have been avoided by the use of such means, and the exercise of such foresight, as is reasonable under the circumstances, it is no defence that the goods were injured by an inevitable, and by an unprecedented, storm. *Pruitt* v. *Railroad Co.*, 62 Mo. 528. The act of God, to excuse the carrier, must be the sole cause of the loss; and the carrier must show, not only that he exercised diligence, but that he exercised a diligence proportioned to the occasion. *Wolf* v. *Express Co.*, 43 Mo. 421; *Read* v. *Railroad Co.*, 60 Mo. 199.

The court committed no error in refusing an instruction in the nature of a demurrer to the evidence, at the close of plaintiffs' case.

The case was given to the jury with the following instructions, of which the first four were given at the instance of plaintiffs :—

"1. The jury is instructed that it was the duty of the defendant to take notice of any and all signs of the approaching danger of a flood, and if they were of such a character as reasonably to awaken apprehension, at a time when the facility and means of removing goods from the danger were reasonably within defendant's control, it was bound to use such means for the safety of plaintiffs' goods entrusted to its care.

" 2. If the jury believe that plaintiffs' goods were injured while in the possession of defendant as a common carrier for transportation, it is incumbent on the defendant to establish by a fair preponderance of evidence that the damage or loss was the result immediately and proximately of the ' act of God.' Proof by plaintiffs of the damage and loss of the goods while in the possession of defendant as aforesaid, makes a *prima facie* case of negligence or misconduct on the part of defendant, which must be overcome by proof that the injury was the result of an inevitable accident, or, in other words, an act of God, and not its own negligence or misconduct.

" If the preponderance of all the evidence does not establish that the direct, immediate, and efficient cause of the injury was an inevitable flood or inundation, the defendant is liable, and although the cause of the loss may have been an act of God, such as a great flood in the Maumee River, yet, if the defendant unnecessarily exposed the goods of plaintiffs to such peril by any culpable or negligent act or omission of its own, it is not excused.

" 3. The jury is instructed, that the defendant is a common carrier, and that its liability as such for plaintiffs'

goods commenced when same were delivered to it, or its duly authorized agents at Toledo, Ohio, and accepted by it for transportation. As such carrier it is responsible to the plaintiffs for the safety of their goods, and for any loss or damage they may have sustained while in its possession as such carrier between the city of Toledo and the city of East St. Louis, unless the act of God was the immediate and efficient cause of the loss or damage complained of.

"4. The jury is further instructed, that it was the duty of the defendant, immediately after the flood, and as soon as the goods of the plaintiffs were accessible, to take reasonable care of the same, and do all that was reasonably necessary to prevent any further damage to them by reason of having become wet by the flood, and any failure on the part of defendant to so care for the same, renders the defendant liable to the plaintiffs for damages occasioned by such failure."

At the instance of the defendant the court instructed as follows : —

" 5. The court instructs the jury, that the rule of law by which a common carrier of freight is liable as an insurer of the safety of the freight delivered to it for transportation is subject to and has its exceptions in this: that such carrier is not responsible to the owner of freight for injuries resulting to it, either from the act of God or the public enemy.

" 6. The ' act of God ' is defined in law to be ' an accident which arises from a cause which operates without interference or aid from man.'

" 7. The court also instructs the jury, that in a suit by the owner of goods against a carrier to recover damages for injuries to such goods, when it appears from the evidence that such injury has resulted from a sudden, violent, and extraordinary condition of the elements operating without interference or aid from man, then the carrier is held in law free from liability for such injury.

" 8. The court further instructs the jury, that if in this case it appears, from a fair and candid consideration of all the facts and circumstances in evidence, that the injury to the goods of the plaintiffs resulted and was proximately caused by the act of God, their verdict should be for the defendant.

" 9. The court also instructs the jury, that the law does not require of a carrier the highest degree of care and foresight to provide for and protect goods in transit against the act of God; but when it is shown by the evidence that the injury which constitutes the claim of plaintiffs has been sustained through the act of God as the efficient cause, and it further appears from the evidence that the defendant company exercised such foresight and care in preventing or averting the effect of the act of God as an ordinarily prudent person or company in the same business would use under all the circumstances of the case, then the carrier is held in law to have discharged its whole duty.

" 10. The court further instructs the jury, that if the evidence shows that the injury to plaintiffs' goods was caused by a sudden, violent, and extraordinary flood at the city of Toledo, whilst the goods of plaintiffs were in the cars in the transfer house at Toledo, the verdict of the jury must be for the defendant, unless the plaintiffs have shown that the defendant was guilty of some specific negligence with reference to the goods which actively co-operated with the act of God to produce the injury.

" 11. The court instructs the jury, that if the evidence shows that the injury complained of resulted from a sudden, violent, and extraordinary rise in the river at Toledo, without any negligence of the defendant operating to aid in producing the injury, the defendant is not liable to the plaintiffs for such injury.

" 12. The court also instructs the jury, that a party is charged by the law with notice of only the usual and probable consequences of a known condition, and is not presumed

in law to know that unusual consequences will result from the known facts or conditions.

" 13. The court instructs the jury, that the law does not require of the common carrier that precedence should be given to the freight of one person over that of like character belonging to another, and in this case the omission on the part of defendant to select the car containing plaintiffs' goods from a number of other cars, for the purpose of giving it a preference in transportation, does not, in itself, constitute negligence with reference to it.

" 14. The court also instructs the jury, that even if the jury should find from the evidence that defendant could have so managed the handling of the freight of plaintiffs at Toledo as to have shipped it thence before the rise of the waters, yet, if the evidence shows that the car in which such freight was, was placed in a house wherein no goods had ever before been injured by a flood, and if the evidence also shows that such place would be regarded by prudent and careful men as absolutely safe as a place of deposit under all the conditions then apparent, then, in law, the defendant, by reason of such omission to send the car out, is not made responsible for an injury which may have occurred to the goods by reason of a sudden and unprecedented rise of water in the house where the goods were.

" 15. The court also instructs the jury, that the law requires of a common carrier of goods, the exercise of only a fair and reasonable care for goods injured in its charge by the act of God. And it must bestow on goods so injured only the care which a reasonably prudent man would, in like circumstances, bestow on his own goods; and in this case, if the evidence shows that the goods in question, whilst in defendant's possession, were injured by the act of God, as defined in these instructions, and that thereafter the defendant did, with reference to them, all that could be done under the circumstances in which it was placed, and was guilty of no negligence in regard to them after the injury,

then the plaintiffs cannot recover against defendant for any supposed omission to dry, or otherwise care for the goods after they were submerged.

" 16. The court also instructs the jury, that if the evidence shows that the goods of the plaintiffs were injured by reason of an unusual, sudden, and extraordinary rise in the waters of the Maumee River, then the burden of proof rests upon the plaintiffs to show that the defendant was guilty of some negligence with reference to the goods which was the proximate and efficient cause of the injury."

We think that these instructions put the case to the jury in a way of which defendant cannot complain.

It is objected that the first instruction assumes that there were signs of an approaching flood, and that plaintiffs' goods were in a dangerous place, and had been entrusted to defendant's care. This cannot have prejudiced defendant, since these facts appear from the evidence of the witnesses for defendant, and from all the testimony in the case, and are not, and cannot be, contested upon the evidence. It is true that there was evidence for defendant that the Middle Ground was considered safe from any flood that was likely to occur ; but the defendant's witnesses state that this ground was under water in the flood of 1867. It cannot be considered erroneous for the court to speak of " the danger," when the evidence on both sides shows, not only danger, but actual overflow and damage ; and there is nothing to the contrary in the case.

It is objected to the second instruction, that defendant is required to " establish" the fact that the damage resulted from the act of God, by a " fair preponderance of testimony." We do not think that this language was liable to be misunderstood to defendant's injury. A contested fact ought not to be believed, unless it is established by evidence ; and, though the court is not to tell the jury to which side the weight of evidence inclines, it is evident that, in weighing facts, the jury is to be governed by the preponderance

of evidence, that is, by a "fair preponderance." The jury cannot find a fact to be true on the evidence, if it thinks that the weight of the evidence is not fairly in its favor.

It is true, that, when the evidence for plaintiffs shows damage, and at the same time a *vis major* sufficient in itself to account for the damage, there is no presumption that the negligence of the carrier, rather than the *vis major*, was the efficient cause of the damage. The general rule laid down in instruction number two might, perhaps, by amplification, have been made more fully and exactly applicable to the case presented by the evidence. But the whole instruction, taken together, was not, we think, misleading. The carrier was bound to anticipate what reasonably cautious persons would have anticipated in regard to the expected flood, and to use such diligence as reasonably cautious persons would have used to withdraw from danger the goods under his charge. The question was, whether the negligence of defendant actively co-operated with the flood to produce the injury; and so the jury is told in effect by this instruction. The instruction itself cannot be considered as misleading, or as contradicting the very full directions as to this matter contained in the instructions for defendant. There was evidence of a *vis major*, and there was evidence of concurring negligence. The jury were to determine which was the *causa causans* of the damage to plaintiff; and how they could determine this, except by the preponderance of all the evidence for one theory or the other, it is difficult to conceive.

The fourth instruction is objected to as unwarranted by any evidence, and by the pleadings. There was evidence that the cars could have been opened on February 13th. But I do not find any evidence tending to show that the goods would have been benefited by opening the car then, or that further damage would have been thereby prevented, or how far the goods were injured by not opening the car as soon as it was accessible. But there seems to be nothing

in the instruction which, under the circumstances, could have prejudiced defendant.

The court, of its own motion, told the jury, in assessing damages, to take the market price at East St. Louis as the standard. There was some testimony as to this; and East St. Louis was the terminus of defendant's road, and the place to which the goods were consigned. There can be no question, on the evidence, that, if plaintiffs were entitled to recover at all, the verdict was not excessive.

Many instructions asked by defendant were refused. These were to the effect that, where the damage is caused by the act of God, the carrier is excused. This was sufficiently declared by the instructions given.

We think that the body of instructions given, taken together, were not calculated to mislead the jury; they were fairly consistent, and set forth a doctrine as favorable for defendant as the controlling decisions in this state will permit.

Evidence was admitted in rebuttal which merely went to strengthen plaintiffs' case, and which ought properly to have been introduced in chief. This was a matter within the discretion of the trial court, and does not furnish ground for reversal.

On the whole, we see no error in the record to the prejudice of defendant which would warrant us in disturbing the judgment. The judgment is affirmed, with the concurrence of all the judges.