SAMUEL J. BROOKS, Respondent, v. THE HANNIBAL AND ST. JOSEPH RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, April 15, 1889.

1. **Railroads**: NEGLIGENCE: KILLING STOCK ON PUBLIC CROSSING: PROPER DILIGENCE: INSTRUCTION. In an action against a railroad for killing stock on a street crossing used by shippers to reach its stock pens, where the evidence tended to show that plaintiff, a shipper of stock, after waiting for some time for defendant's regular trains to pass, did, when the trains had passed, undertake to drive his stock across defendant's track to its stock pens to ship them, and while so doing, a train being made up in the yard suddenly came upon the main line and backed and killed plaintiff's steer; that in said train was a box car which prevented the conductor and the engineer, who were the only hands on said train, from seeing or signalling each other, and also prevented the engineer from seeing the cattle, until just before they were struck; the conductor, as soon as he saw the stock on the track, set his brakes and did all in his power to avert the disaster, the train then running as much as six miles an hour, and slowed down to two when the animal was struck; the city ordinance prohibiting trains running at a greater rate than five miles an hour, and no bell was rung or whistle sounded, *held*, it was proper to refuse an instruction, which told the jury that if they believed that defendant's servants in charge of the train, after they discovered the cattle on the track, used proper diligence and endeavored to avoid injuring them, then they must find for the defendant, as said instruction was too narrow and restrictive and ignores material issues, for the defendant would be liable if it failed to discover the cattle, through its own recklessness, where the exercise of ordinary care would have discovered it and averted the collision.

2. **Comparative Negligence**: DOCTRINE OF, NOT RECOGNIZED: INSTRUCTION CONTAINING, WHEN HARMLESS. An instruction directing the jury that if they find that the plaintiff in the act of driving his cattle over said crossing was negligent and that defendant's servants in operating the train at and before the accident were also negligent and if they are unable to discriminate between the degrees of negligence of each of the parties, they should find for the defendant, is disapproved as apparently announcing the doctrine of comparative negligence, which the law of the state does not recognize, yet, as it is not perceived how it could affect defendant injuriously, it is not deemed reversible error in this case.

3.   **Practice**: INSTRUCTIONS. An instruction imposing upon plaintiff's right to recover an unnecessary condition precedent, which could not injure defendant, is not reversible error on defendant's appeal.

4.   **Instructions, Criticised.** In the opinion the instructions of the court are examined and criticised, but held only to contain harmless error in their application to the facts of this case.

*Appeal from the Clay Circuit Court.*—HON. J. M. SANDUSKY, Judge.

AFFIRMED.

*Thos. E. Turney, Strong & Mosman,* for appellant.

(1) The court erred in giving the instruction number 6 of its own motion. The law of comparative negligence is not known in this state. "The law has no scales with which to determine the comparative fault of the parties." *Welsh v. McAlister*, 13 Mo. App. 89–90 ; *Ashbrook v. Railroad*, 18 Mo. App. 290–305 and 306, and authorities cited. To such a comparison, the jury was directly invited by this instruction. Nor is the instruction helped by the direction to find for the defendant in case they could not determine whose negligence was the proximate cause of the injury. If the plaintiff was guilty of negligence at all in driving his cattle on the track, his negligence was a proximate cause of the injury. His act was not a remote condition of the injury, as in *Myer v. Railroad*, 59 Mo. 223, but a direct one. If the instruction was regarded by the jury, their inquiry was, necessarily, which was the most direct and proximate cause ? (2) Defendant's first instruction should have been given. In driving his cattle on the track without looking for trains, and without inquiry at the depot, the plaintiff was guilty of such contributory negligence as precludes a recovery. Under the circumstances, as detailed in his own evidence, ordinary

care required that he should take, at least, one of these precautions. *O' Donnell v. Railroad*, 7 Mo. App. 190 ; *Craig v. Sedalia*, 63 Mo. 417 ; *Barton v. Railroad*, 52 Mo. 253 ; *Buesching v. Gas Co.*, 73 Mo. 219–229 ; *Rilley v. Railroad*, 18 Mo. App. 151 ; *Milburn v. Railroad*, 86 Mo. 104. If either precaution had been observed the injury would not have occurred. Even if . the crossing had been a public one, the first would have been required. *Turner v. Railroad*, 74 Mo. 603. Even conceding that there was proof of negligence of defendant, yet it was but negligence against negligence, and where both parties are negligent and contribute to the injury, there can be no recovery. *Milburn v. Railroad*, 86 Mo. 109. (3) Plaintiff's second instruction should have been given. *Brooks v. Railroad*, 27 Mo. App. 573 ; *Rine v. Railroad*, 88 Mo. 392 ; *Strauss v. Railroad*, 75 Mo. 185–191–192. The statement of the case made by the court when the case was here before is as true now as it was then. *Brooks v. Railroad*, 27 Mo. App, 574 ; *Bann v. Railroad*, 69 Mo. 219 ; *Hodge v. Railroad*, 71 Mo. 50. That the speed of the train caused the injury is not, and, under the evidence, cannot be, claimed by anyone. *Karl v. Railroad*, 55 Mo. 476.

*Simrall & Sandusky*, for respondent.

(1) The sixth instruction, given by the court on its own motion, rightly considered and with the qualifications intended is unexceptionable in every sense. The effect is simply to clearly and firmly tell the jury to look through the evidence, and if both parties were negligent, to ascertain what was the direct and proximate cause of the injury and without which, in all reasonable probability, it would not have occurred, and to find against the party who was guilty of the proximate cause—the cause without which, in all reasonable probability, the injury would not have occurred.

*Whalen v. Railroad*, 60 Mo. 323. (2) Defendant's first instruction was properly refused. Plaintiff was not guilty of any negligence, unless it was negligence for him to drive his cattle across defendant's tracks, at the usual crossing, for shipment on defendant's road, after ascertaining that defendant's track was clear. (3) The injury occurring near the depot, and in the city, and at a place where all stock shipped over the railroad had to cross the railroad, and where persons living across the railroad had to cross the railroad in going to or coming from town, and where no fences could be erected to keep the track clear, it was defendant's duty to operate its train with reference to these facts. *Isabel v. Railroad*, 60 Mo. 475 ; *Brown v. Railroad*, 50 Mo. 461 ; *Frick v. Railroad*, 75 Mo. 595 ; *Whalen v. Railroad*, 60 Mo. 323. (4) Appellant's second instruction ( refused by the court) is not the law upon the evidence in this case. It is only the law in the case where a railroad company's employes make proper efforts to prevent injury after discovery of the peril, and where, also, negligence of the employes, antecedent to the discovery of the peril, had not made it impossible for them to prevent injury after discovery of the peril. Appellant's second instruction would condone all negligence and recklessness on part of defendant prior to discovery of the peril. Defendant's train was so negligently and recklessly arranged and made up, a box car being near the engine, that it was a physical impossibility for the engineer to see signals given from the flat cars, although looking out for them. *Dunkan v. Railroad*, 95 Mo. 232 ; *Maher v. Railroad*, 64 Mo. 267. (5) The speed of the train was the cause of the injury.

*Huston & Parrish* in reply for appellant.

(1) Under the pleadings and evidence in this case, the only question necessary to its determina tion was, could the employes of the defendant in charge of the

train, after they discovered plaintiff's cattle on the track, by the use of ordinary care and diligence, have prevented the injury? This case, 27 Mo. App. 573 and authorities cited in appellant's original brief. 1 page 26. (2) The court erred in permitting the plaintiff to read in evidence the ordinance of the city of Liberty, fixing the rate of speed at which locomotive engines and trains of of cars should be operated. (*a*) There was no proof that the point where plaintiff's steer was injured, or at any point where defendant's train was run was within the corporate limits or boundary lines of said city. (*b*) This evidence was given prominence by the first instruction given for the plaintiff and it was, therefore, made erroneous, whether objected to or not. "The jury in arriving at their conclusions must take into consideration all of the evidence in the case, and give to every portion of it such weight and credence as sound judgment and the facts and circumstances entitle it, and may make all reasonable and proper inferences from facts which they shall find proven. (3) Instruction number one given for the plaintiff (above set out) is erroneous and calculated to mislead the jury. (4) Instruction two, given for the plaintiff is erroneous. It is a commentary—a mere abstraction, and was calculated to mislead the jury. *Zigler v. Storts*, 30 Mo. App. 164–74; *Fairgrieve v. Moberly*, 29 Mo. App. 141; *Stone v. Hunt*, 94 Mo. 475, and authorities cited; *Fairgrieve v. Moberly*, 29 Mo. App. 164. (5) The third instruction given for the plaintiff is erroneous, for the same reason assigned against instruction three in this brief. (6) Instruction five, given for the plaintiff, is erroneous.

SMITH, P. J.—This suit was brought before a justice of the peace of Liberty township in Clay county, to recover damages for the killing of a steer.

The case was tried in the circuit court where the plaintiff was successful and subsequently it was brought

here by appeal where the judgment of the circuit court was reversed and the cause remanded. 27 Mo. App. 573.

The case was again tried upon substantially the following statement:

(1)  That the defendant negligently ran its train down grade without a sufficient number of brakemen to check its speed, etc.

(2)  That defendant ran its cars, locomotives and engines past its depot in the city of Liberty where people were accustomed to congregate in large numbers and where stock was accustomed to be driven across the railroad in large numbers to reach the stock yards of defendant for shipment and through a thickly settled part of the city of Liberty at a negligent and unlawful speed in violation of an ordinance of the city of Liberty, number 16, entitled "an ordinance in relation to misdemeanors."

(3)  That it ran its train of cars, fourteen in number on down grade, at a negligent and unlawful speed without a sufficient number of brakemen and without any brakemen at all on said train to check or stop its speed in case of danger to persons or property.

(4)  That there was a curve in the road and a box car in the train, which was at the time of the injury being backed down and which obstructed the sight of the engineer and fireman from seeing ahead of the backing train and from seeing the plaintiff's stock on the defendant's railroad track, and which said box car prevented the conductor and engineer from seeing each other and from communicating by signals the one with the other, etc.

(5)  That no bell was rung or whistle sounded.

(6)  That the defendant had negligently failed to provide said train with a sufficient number of servants to stop the train after the trainmen discovered the plaintiff's cattle on the track, etc.

The evidence tended to show that the plaintiff with others at the city of Liberty in Clay county undertook to drive about one hundred head of beef cattle from the north side of defendant's railroad over the same at a crossing some fifty yards west of its depot in the said city of Liberty after first holding them there for three quarters of an hour for trains to pass and the track to become clear, to the stock yards of defendant on the south side of its railroad track, preparatory to shipping them over the defendant's road to Chicago ; that while the plaintiff's cattle were passing over the defendant's track at and near said crossing a train which was being made up in the yard of defendant at the station suddenly came out upon the main line and backed over and killed the plaintiff's steer. The uncontradicted evidence was that owing to the presence of a box car in the backing train and the curve in the road, the engineer could not see ahead of his backing train and did not discover the plaintiff's cattle on the track. Nor could the conductor for a like reason communicate by signal with the engineer, though he was in the west car of the backing train and saw the plaintiff's cattle in time to have stopped the train had he been able to have promptly communicated to the engineer the notice of the danger.

There was no brakeman or other servant on the train between the conductor and engineer through whom the former could signal the latter. The conductor after being apprised of the peril set his brakes and did every thing in his power to avert the disaster. The train was running at the rate of six miles an hour even at the time it passed the depot but at the time it collided with the plaintiff's steer it was not moving faster than two miles an hour. The engineer could not see the cattle until just before they were struck.

When the plaintiff drove the cattle on the track it was clear. No regular trains were there then. The

crossing already mentioned was one constructed by defendant at that point and was used by the shippers of stock in driving to its stock yards on the south of the track and by the public. It was situate in the city of Liberty and where there were a number of people living who used the same.

An ordinance of the city of Liberty was introduced in evidence which prohibited the running of trains through the city of Liberty at a greater rate of speed than five miles per hour. There was other evidence, but enough has been stated for our present purpose.

The circuit court refused all the instructions asked by both plaintiff and defendant and on its own motion gave six instructions as the law of the case.

The verdict of the jury was for the plaintiff. After the motion to set the same aside was overruled, judgment was entered from which the defendant appeals here.

I.    The defendant's first ground of appeal is that the circuit court erred in its refusal to give the instruction which was asked on the part of defendant, and which told the jury that if they believed that defendant's servants in charge of defendant's train, after they discovered plaintiff's cattle on the defendant's road, used proper diligence and endeavor to avoid injuring them they must find for defendant.

This instruction was properly refused. It ignores material issues in the case. It is too narrow and restrictive in its scope. To affirm that the defendant would be only liable if after the discovery of the plaintiff's cattle on the track by the defendant's servants in charge of the colliding train would be a gross perversion of the principles of law which should govern a court and jury in disposing of a case whose facts are like this.

It may be conceded that it was impossible for defendant's servants in charge of said train to have checked it after the discovery of the perilous situation

of the plaintiff's cattle, still this fact would not exonerate the defendant if guilty of negligence beforehand which created the impossibility. *Maher v. Railroad,* 64 Mo. 297; *Dunkman v. Railroad,* 95 Mo. 232; *Rine v. Railroad,* 88 Mo. 392; *Yarnall v. Railroad,* 75 Mo. 583; *Zimmerman v. Railroad,* 71 Mo. 477.

When this principle is applied to the facts of this case it becomes apparent that the defendant's contention in this regard is baseless. It was shown by the uncontroverted evidence that the defendant so arranged the cars in its backing train as to wholly exclude from the vision of the engineer of said train the track over which he was backing said train, and thereby rendered it impossible for him to observe the perilous situation of the plaintiff's cattle until an instant before they were struck. The defendant, by the arrangement of its cars in said train, by its failure to have one or more brakemen on backing train through whom the conductor could have signaled the engineer and thus warned him of the impending danger, by the unlawful speed which it ran said train through the city and over said crossing where plaintiff's steer was killed, created the conditions which made it impossible for defendant's servants in charge of said colliding train to stop it in time to avoid the collision

Under a state of facts like these the principle of the defendant's refused instruction was inapplicable.

The principle of this instruction should not apply in a case like this where the employes in charge of the colliding train draw a veil over their faces and thus make it impossible for them to see an object on the track of the railroad. The train in question was a blind train. The eyes of the engineer whose hands held the lever of the engine that propelled the colliding train were rendered useless to him by reason of the way the train was made up.

If it was necessary to place this car in the train for the purpose of making it up, then there was the greater necessity for observing said municipal regulation as to speed, and for the placing of brakemen on said train through whom the conductor could signal the engineer. The precaution of the defendant should have been, as it was not, proportionate to the danger and peril attending the movement of a train at that point.

To restrict the inquiry in this case to the very narrow limits of defendant's instruction would, it seems to us, be a travesty of justice. It has been settled by an unbroken line of adjudged cases that notwithstanding the injured party may have been guilty of contributory negligence, a railroad company is still liable if it failed to discover the danger through its own recklessness, where the exercise of ordinary care would have discovered it and averted the calamity. *Dunkman v. Railroad*, 95 Mo. 232 ; *Harlan v. Railroad*, 65 Mo. 22 ; *Bergman v. Railroad*, 88 Mo. 678 ; *Rine v. Railroad*, 88 Mo. 392 ; *Mertz v. Railroad*, 88 Mo. 677 ; *Drain v. Railroad*, 86 Mo. 574.

The real question is, perhaps after all, whether the defendant failed to discover the danger of plaintiff's animals through its own recklessness where the exercise of ordinary care would have discovered it and have averted the collision, and this under the instructions of the court was answered by the jury in the affirmative.

II.    While the first instruction given by the court was not as clear and explicit as it should have been it was not calculated to mislead the jury to the prejudice of the defendant. Under the facts proven the jury could have made but one inference as to the direct and efficient cause of the injury. No other inference could have been reasonably deduced and therefore the latitude which this instruction gave the jury could not have been harmful to defendant. *Morris v. Railroad*, 79 Mo. 367 ; *Vance v. Metcalf*, 19 Mo. App. 183.

III.   The second instruction complained of is not a mere abstraction.   Taken in connection with the other instructions given, it is unobjectionable, but taken singly and by itself, it may be subject to some verbal criticism.   Instructions must be considered in their entirety.   *Sullivan v. Railroad*, 88 Mo. 169.

This instruction assumes no controverted fact and being correct in other respects, the judgment must not be disturbed because of its assumption of uncontradicted facts.   *Railroad v. Railroad*, 70 Mo. 629 ; *Field v. Railroad*, 80 Mo. 203 ; *Keen v. Schnedler*, 92 Mo. 516 ; *Davis v. Railroad*, 13 Mo. App. 449.

IV.   Defendant's assault upon the court's third instruction must fail.   It does not as defendant supposes assume any controverted fact.   It simply directed the jury in very explicit terms that it was the duty of defendant and plaintiff to observe certain precautions at said crossing and that the duty was as strong on one as the other, and what these duties are—it was and is the duty of plaintiff and other shippers when the attempt is made to drive stock over said crossing, to do so with such prudence and caution, and with such lookout for trains as sensible, prudent men would exercise in the like case.   The law holds that the defendant might anticipate that at any time, during the customary hours of shipment persons may wish to drive stock over said crossing for purposes of shipment, and that therefore it was, and is, the duty of defendant at all such times to keep in mind this fact, and to operate its trains at the station where said stock yard is with reference to the facts and circumstances of the case, and with fair and reasonable caution—such caution as prudent, thoughtful, sensible men would exercise—not only to prevent accidents at said crossing, but so as not unreasonably to abridge the benefits of its invitation to shippers to cross their cattle at said crossing for purposes of shipment.

It is not believed that under the theory of this instruction the right of the plaintiff to drive his cattle across defendant's road was paramount to its right to operate its road. No such hypothesis is presented by it as defendant's counsel contend.

V.    The fourth instruction given was exceedingly favorable to the defendant. It presented with remarkable fairness a theory upon which defendant could submit its side of the case to the jury.

It told the jury that if the defendant's servants in charge of the colliding train were, at the time they discovered the plaintiff's cattle on the railroad, and in the operation of said train had been from the time they moved it off the side track upon the main track, in the exercise of the fair and reasonable caution on its part mentioned in plaintiff's preceding instruction number 3, and that after they discovered said cattle on said track they used proper diligence and endeavor to avoid injuring them, their verdict should be for the defendant.

This instruction was broad enough to cover the whole case. It is quite difficult to understand why the defendant should complain of an instruction so favorable to it.

VI.    The fifth instruction directed the jury that before they could find for the plaintiff they must first find that he drove his cattle over the customary crossing, and, at and before driving his cattle over said crossing to said stock yards, was in the exercise of such prudence and caution, and was keeping, and had kept, such lookout for trains as is contemplated on his part in said preceding instruction number 3, and that after discovery of the approach of the train in controversy, he and his servants and his employes did all they could in reason to get the cattle over the track and avoid injury, they will find the issues for the plaintiff under the second count in the statement. This instruction when considered in connection with the others of the series was

correct and to which no substantial grounds of objection have been urged.

VII. The defendant also complains of the sixth instruction. This instruction may be divided into two parts, for it expresses two thoughts.

The first part of which directed the jury that if they found that the plaintiff in the act of driving his cattle over said crossing was negligent, and that defendant's servants in operating the train at and before the accident were also negligent, and if they are unable to discriminate between the degrees of negligence of each of the parties, they should find for defendant. While it is the well-settled law of this state that the doctrine of comparative negligence cannot be recognized, still the jury were directed that if they could not determine which of the parties was most in fault in respect to the infliction of the injury that they should find for the defendant.

This part of the instruction does not meet our approval, but inasmuch as we are unable to perceive how it could have affected the defendant injuriously we are unwilling to reverse the judgment on account of the giving of the same. If, however, it meant that if the jury found both parties were negligent and that they were unable to fix the direct and proximate cause of the injury on either party they should find for the defendant, then it embodies a correct declaration of the law, though faulty in language. *Whalen v. Railroad*, 60 Mo. 323.

The latter part of said instruction directed the jury that if they could discriminate between the degrees of negligence and could satisfactorily determine under the preceding instructions as to whose negligence was the direct and proximate cause of the accident without which in all reasonable probability it would not have happened, then they should find against the party to whom they attribute the negligence which was such direct and proximate cause.

The words "if they can discriminate between the degrees of negligence," are wholly superflous and impose upon the plaintiff's right to recover an unnecessary condition precedent which could not injure defendant, and which is not therefore deemed reversible error. *Meyers v. Railroad*, 59 Mo. 230.

Why the defendant should complain of this part of the instruction, since it simply threw an unnecessary obstacle in the way of the plaintiff's recovery, is difficult to understand.

The doctrine of this instruction as to the direct and proximate cause of the injury was well enough. *Meyers v. Railroad*, 59 Mo. 230; *Karl v. Railroad*, 55 Mo. 476.

The instructions while in main correct are unnecessarily elaborate and abstruse. Why the learned circuit court judge who declared the law of the case to the jury should have deemed it proper to have submitted to them so many rules which were not only questionable but which did not very greatly tend to enlighten the understanding in respect to their duty in the case surpasses all understanding. A simple case was made complex. Such a method of instructing juries is not to be commended.

VIII. Defendant further insists that it is not shown by the evidence that the plaintiff's steer was injured in the corporate limits of the city of Liberty. The evidence shows that defendant's railroad runs through it and that the injury to plaintiff's steer occurred in the same. At least there is evidence tending to prove that fact.

It cannot be said that there is no evidence of this fact. No objection was taken and preserved to the admission in evidence of the said ordinance, limiting the rate of speed of railroads in said city, and therefore there is no question presented in respect thereto that we can review.

Upon a consideration of the whole case we think the verdict of the jury was for the right party. We are unable to perceive that it would subserve any useful purpose to reverse and remand the cause for a new trial, as under any correct exposition of the law applicable to the case the result would not be different from that which was reached at each of the trials that have been had. In any view of this case which we have been able to take we have felt constrained to affirm the judgment, and in which all concur.