DAVIS *et al.* v. THE WABASH, ST. LOUIS & PACIFIC
RAILWAY COMPANY, *Appellant.*

1.   **Common Carrier: LOSS OF GOODS: LIABILITY FOR.**   The law im-
poses upon a common carrier the obligation of safety as to goods
in its possession for transportation, and unless relieved from liability
by the act of God or the public enemy it is responsible in damages
for their loss or injury, although there may be no actual negligence
on its part.

2.   ——: ——: PRIMA FACIE CASE: BURDEN OF PROOF.   In an ac
tion against it, for loss of goods, if the plaintiff shows a delivery of
the goods and their subsequent loss, he makes out a *prima facie*
case; the *onus* is then on the carrier to show the facts exempting it
from liability.

3.   **Carrier's Negligence Co-operating With Act of God.**   Where
the burden is cast on the carrier to exempt itself from liability, it
must make a case in which no negligence of its own appears.   In
that event it is excused, unless the plaintiff shows, or it appears
from the evidence that the carrier's negligence caused or co
operated to produce the loss complained of.

4.   ——: ONUS PROBANDI.   Where, from the plaintiff's own evidence,
it appears that the act of God caused the injury to the goods the
carrier is exonerated from liability unless plaintiff shows the car-
rier was guilty of some specific negligence which actually co-
operated to produce the loss.

5.   **Injury to Goods: DUTY OF CARRIER TO PREVENT INCREASE OF
DAMAGES.**   It is the duty of a common carrier, when property in
its possession for transportation has been injured, to preserve it
and limit the damages as far as it can by the exercise of reasonable
diligence, but an instruction should not be given on such question

in the absence of evidence of the carrier's neglect in that regard affording a foundation for it.

*Appeal from St. Louis Court of Appeals.*

REVERSED.

*H. S. Priest* for appellant.

(1) There should have been no recovery in this case, for the following reasons: (*a*) The declaration is upon a contract, in which there is no privity shown between the plaintiffs and the defendant. *Railroad v. Railroad*, 30 Am. Rep. 23; s. c., 9 S. C. 325; Angell on Carriers, sec. 429; *Weed v. Railroad*, 19 Wend. 234; Schouler's Bailments, 572; *School District, etc., v. Railroad*, 102 Mass. 552; Bliss Code Pleading, sec. 234 *et seq.;* 2 Chitty Pleading [9 Am. Ed.] side p. 356, 355; *Anchor Line v. Dater*, 68 Ill. 369; *Coxon v. Railroad*, 5 Hurl. & N. 274; *Gray v. Ottolengui*, 12 Richardson (S. C.) 101; *Winterbottom v. Wright*, 10 Exch. Rep. 109; *Gray v. Jackson*, 51 N. H. 9; s. c., 12 Am. Rep. 1; *Railroad v. Pratt*, 22 Wall. 123; *Railroad v. Myrick*, 107 U. S. 102. (*b*) The proximate cause of the injury was the act of God, for which there can be no recovery. *Flori v. City of St. Louis*, 69 Mo. 341; *Ellett v. Railroad*, 76 Mo. 534; Wharton's Negligence, secs. 114, 558. (*c*) No negligent delay in forwarding the merchandise from Toledo, after it came into defendant's possession, was shown; but even conceding that such delay was proven, the injury which followed was in no wise naturally connected, as cause and effect, with that delay; it was not the natural or probable result, or such a result as the mind of an ordinarily prudent person would contemplate or foresee as a consequence; the injury was wrought by a casual or accidental cause; a remote and not a proximate consequence. *Morrison v. Davis*, 20 Pa. 171; *Denny v. Railroad*, 13 Gray, 481; *Railroad*

*v. Reeves,* 10 Wall. 188; *Francis v. Transfer Co.,* 5 Mo. App. 7; *Schiffer v. Railroad,* 105 U. S. 249; *Clarke v. Railroad,* 39 Mo. 184; *Ballentine v. Railroad,* 40 Mo. 491; *Henry v. Railroad,* 76 Mo. 288. (2) The case was put to the jury upon erroneous instructions, given at the request of plaintiffs. Instruction number one was abstract and misleading, as applied to the facts of this case. *Flori v. City of St. Louis,* 69 Mo. 341. (3) Instruction number two was likewise abstract and misleading, and also wanting in many cardinal elements, which in this case constitute a liability. (*a*) It placed an undue burden of proof on defendant. Thompson on Negligence, 1227, notes 2, 3 and 4; *Graves v. Colwell,* 90 Ill. 612. (*b*) It did not properly discriminate between the conclusions of law and inferences of fact which may be drawn from given facts, and was, therefore, misleading. *State v. Laurie,* 1 Mo. App. 376; *Clarke v. Kitchen,* 52 Mo. 317; *Young v. Ridenbaugh,* 67 Mo. 384; *Insurance Co. v. Hogan,* 80 Ill. 35. (*c*) In civil cases the law does not require a party "to establish" his case or defence by a clear or "fair" or any quality of preponderance of evidence. It is sufficient, if the evidence preponderate ever so slightly in his favor. *Dyer v. Brannock,* 3 Mo. App. 432; *Ellis v. McPike,* 50 Mo. 575; *Clarke v. Kitchen,* 52 Mo. 317; *Ruff v. Jarnett,* 94 Ill. 475; *Stralion v. Railroad,* 95 Ill. 25; *Bitter v. Saathoff,* 98 Ill. 266. (*d*) It is not true that the law places the burden of proof on the carrier to show that the injury resulted from the act of God. If it appears in the evidence of plaintiffs that the injury resulted from an extraordinary flood, the burden remains on plaintiffs to show by a preponderance of evidence, that such flood was a remote rather than the proximate cause. *Gillespie v. Railroad,* 6 Mo. App. 558; *Railroad v. Reeves,* 10 Wall. 176; *Transportation Co. v. Donner,* 11 Wall. 129; *Wilson v. Railroad,* 13 Reporter, 302. (*e*) The evidence of plaintiffs shows that the goods were

injured by a sudden, violent and extraordinary flood; in such case no inference of negligence can be drawn from the fact of loss, and the burden is on the plaintiffs to prove it. *Wilson v. Railroad*, 13 Reporter, 302; *Transportation Co. v. Donner*, 11 Wall. 129; *Clarke v. Barnwell*, 12 Howard, 272; *Scott v. Dock Co.*, 3 H. & C. 596; *Vail v. Railroad*, 63 Mo. 220. (*f*) It is error to instruct the jury what any given evidence establishes, or to direct them to a consideration of a particular part of the evidence to the exclusion of others. The instruction does both. *Koenig v. Life Association*, 3 Mo. App. 596; *Chappel v. Allen* 38 Mo. 222; *Raysdon v. Trumbo*, 52 Mo. 38; *Ellis v. Mc-Pike*, 50 Mo. 575; *Bank v. Currie*, 44 Mo. 92; *Bank v. Armstrong*, 52 Mo. 73; *Ogden v. Kirby*, 79 Ill. 555. (*g*) It is further faulty in telling the jury that this presumption of misconduct "must be overcome by proof." *Gillespie v. Railroad, supra.* If there was any presumption arising at all, it was one of fact to be drawn, not by the court, but by the jury. *Barton v. Railroad*, 52 Mo. 259; *Owens v. Railroad*, 58 Mo. 393; *Graves v. Colwell*, 90 Ill. 612. (*h*) It assumes the existence of every fact necessary to give the plaintiffs a *prima facie* case. (*i*) It requires the defendant to "establish," *i. e.* to make clear, "to fix unalterably," its defence. The authorities heretofore cited show that no such rule applies in civil cases. (*j*) There is no averment in the petition that "the defendant unnecessarily exposed the goods of plaintiffs." Yet the jury are told the plaintiffs may recover if such was the case. The instruction must be confined to the specification of negligence in the petition. *Givens v. VanStuddiford*, 4 Mo. App. 499; *Raysdon v. Trumbo*, 52 Mo. 35; *Budd v. Hoffheimer*, 52 Mo. 297; *Railroad v. Mock*, 72 Ill. 141; *Railroad v. Hughes*, 69 Ill. 170. (4) By plaintiffs' fourth instruction the jury were told that it was defendant's duty, as soon as plaintiffs' goods were accessible after the flood,

"to do all that was reasonably necessary to prevent any further damage to them by reason of having become wet, and any failure so to do renders defendant liable for damages occasioned by such failure." (a) There was no evidence on which to base this instruction, and it is, therefore, erroneous. (b) There was no duty resting on defendant to care for these goods "immediately," which would be in preference to other goods in its control in like condition. *Steamboat Lynx v. King et al.*, 12 Mo. 272; *Swetland v. Railroad*, 102 Mass. 276; Hutchinson on Carriers, sec. 327. (c) The instruction made it the duty of defendant to do "what was reasonably necessary to prevent further" injury, independent of any consideration as to whether it was possible to do what was necessary or not. It was only its duty to do what the defendant reasonably could, under the peculiar circumstances by which it was surrounded, and which the facilities of the place allowed. *Lemont v. Lord*, 52 Me. 365; Hutchinson on Carriers, secs. 201–202; *Railroad v. David*, 6 Heisk. 261; *Morrison v. Davis*, 20 Pa. St. 171; *Nugent v. Smith*, 1 Law R., Com. P. Div., 423; *The case of the Generous*, 2 Dodson, 324. (d) The concluding sentence of this instruction assumes that the goods were damaged, to some indefinite extent, by a failure to care for the goods after the flood. This is assumed not only without evidence to warrant it, but in defiance of evidence to the contrary. *Turner v. Railroad*, 51 Mo. 501; *Lester v. Railroad*, 60 Mo. 265; *Bank v. Armstrong*, 62 Mo. 59. (5) The court erred in refusing instruction number nine asked by the defendant, for the reason that it defined the care required of the defendant in the transportation of the goods, under the circumstances of this case. (6) The court erred in refusing instruction number eighteen, as defining what, in this particular case, would amount to negligence on the part of the carrier. (7) It was error on the part of the court to refuse instruction number seventeen. This

instruction defined what was, in law, the proximate cause.

*Noble & Orrick* for respondents.

(1) The court did not err in refusing the instruction to the jury at the conclusion of plaintiffs' evidence in chief, that under it they should find for the defendant. It is true the fact of the flood appeared in plaintiffs' evidence, but it also appears that defendant, before the flood came, had reason to apprehend it from facts which it was his duty to know. (2) The court below committed no error in admitting the introduction of evidence in rebuttal. The order in which evidence may be introduced is left to the discretion of the trial court. *Barnes v. Wheelan,* 52 Mo. 520; *Pier v. Heinrichoffen,* 52 Mo. 33; *State v. Daubert,* 42 Mo. 239; *Ober v. Carson,* 62 Mo. 209. The court did not err in permitting J. A. Church to give his opinion as to when the ice above Toledo would break up. *Vail v. Railroad,* 63 Mo. (3) East St. Louis was the place of delivery of the goods and it was proper to take the market price there as the standard for the measure of damages. (4) There is evidence tending to prove negligence on the part of defendant. The law as declared by the court below in all the instructions given is most favorable to defendant. *Pruitt v. Railroad,* 62 Mo. 542; *Wolf v. Am. Ex. Co.,* 43 Mo. 421; *Reed v. Railroad,* 60 Mo. 199. Where the defendant's negligence concurs in and contributes to the injury, the defendant is not exempt from liability on the ground that the immediate danger is occasioned by the act of God or inevitable accident. Authorities, *supra.* (5) The verdict and judgment is for the right party and should therefore be affirmed. (6) The defendant should have done all that was reasonable and necessary to prevent any further damage to the goods after having become wet after the flood. *Bird v. Cromwell,* 1 Mo. 58.

(7) There is evidence tending to show that appellant was guilty of negligence, which negligence contributed to the damage sustained by respondents' goods. The question to be considered by this court is, not whether the weight of the evidence sustains the verdict and judgment, but whether there was any evidence tending to prove this negligence, and if such evidence appears on the record this court will not reverse the judgment. *Lockwood v. Ins. Co.*, 47 Mo. 50; *McKay v. Underwood*, 47 Mo. 185; *Reid v. Ins. Co.*, 58 Mo. 42.

RAY, J.—This action was begun by plaintiffs, to recover damages sustained by their goods, consisting of silks and other valuable dry goods, whilst in defendant's possession, as a common carrier. Upon a trial in the circuit court, plaintiffs had a verdict and judgment in their favor, for $6184.29, from which defendant appealed to the St. Louis court of appeals, where the same was affirmed, and defendant has appealed therefrom to this court.

The goods, when damaged, were in course of transportation from New York to East St. Louis, by "The South Shore Line," which it appears did a "transportation business" over several connected railroads, including that of the defendant. The merchandise arrived at Toledo on the eleventh day of February, 1881, and the car, being in a crippled condition, was sent to the transfer house, where the goods were unloaded and placed on the platform at 2:30 o'clock, P. M., of said day, at which time, the defendant gave its receipt for the goods to the connecting road. This transfer house, it seems, is a place where freight going in both directions, east and west, is exchanged by numerous railroads connecting at Toledo, and as also appears, freight thus passing through said exchange depot, is, in the usual and ordinary course of business, subject to some necessary and unavoidable delay, occasioned by the switching, unload-

ing and transfer of the same from one railroad to another. By eight o'clock, P. M., of said February 11, 1881, the defendant had reloaded the goods from the platform of the transfer house into one of its cars preparatory to shipment of the same to East St. Louis, which car containing plaintiffs' goods was left, with other cars, standing at the platform waiting to be attached to defendant's train to St. Louis, which it seems would, in the ordinary course of business, leave Toledo about ten or eleven o'clock that night, or would be switched with others in the usual course of business, out of the transfer house at or before eleven o'clock, at which hour, the men usually quit work for the night. The evidence indicates pretty clearly, we think, that, in handling and taking the freight, in its turn (which was the duty of the carrier in the premises, in the absence of perishable qualities in the property, or other special circumstances, giving it preference), the car, in question, could not have been gotten out, in the usual course of business, in time for the earlier train for St. Louis that night. The testimony of Rich and Stowe, who were sworn in plaintiffs' behalf, is, we think, substantially to this effect.

About midnight on said February eleventh the waters from a flood in the Maumee River reached the railroad tracks at the transfer house, and soon rose high enough to submerge and damage plaintiffs' dry goods whilst in said car at the platform awaiting shipment. The evidence offered in plaintiffs' behalf, as well as that for defendant, shows that the waters in which said goods were submerged, as charged in the petition, were the waters of an extraordinary flood occurring in the Maumee River. The character and magnitude of this flood is not called in question, but on the contrary is conceded to have been unprecedented, and such as is denominated an act of God, properly so-called. There is further evidence, also, offered by plaintiffs tending, at least in some degree, to support the allegation in the

petition that defendant negligently permitted the goods to be submerged. The evidence for plaintiffs, in this behalf, is not, perhaps, harmonious; indeed, it is, we think conflicting and contradictory, but it is sufficient, we think, to meet the objection urged upon us, with great earnestness, that there is no substantial evidence of negligence to go to the jury. A summary of this evidence prepared by the court of appeals, with special reference to this objection will be found in the opinion of that court. 13 Mo. App. 449, 454. The evidence, we deem of the most importance, and upon which, as the same is now preserved in the record, the liability of defendant if any mainly depends we think, is that tending, somewhat, to show that defendant was informed and aware of the impending and approaching flood in time to have removed the goods of plaintiff to higher ground or place of safety and that, tending, in like manner, to show that it omitted on the night of February eleventh, after it was manifest that there would be an unusual flood and danger therefrom, to employ the force and means employed by other railroads and persons similarly situated at the time, to move or switch the car containing plaintiffs' goods, to the higher ground a half mile west of the transfer house where they would have been safe from the flood and which there is evidence tending to show could have been done as late as eleven o'clock that night. It is not necessary to set out the substance of the testimony in defendant's behalf, to the contrary. Reference will be made to its general scope in the further progress of this opinion. In this connection, we may say, as is well said, by that court, "We are not concerned with the weight of the evidence. If there is substantial evidence of negligence on the part of defendant directly contributing to the injury it is quite immaterial that there is a great deal of testimony to the effect that by no diligence could defendant have foreseen or avoided the mischief." But

whilst this is so, such a state of the evidence makes, we think, the *burden of proof* a question of great importance in the case.

The second instruction given at plaintiffs' instance is as follows :

"2. If the jury believe that plaintiffs' goods were injured while in the possession of defendant as common carrier for transportation, it is incumbent on the defendant to *establish*, by a *fair* preponderance of evidence, that the damage or loss was the result immediately and proximately of the 'act of God.' Proof by plaintiff of the damage and loss of the goods while in the possession of defendant, as aforesaid, makes a *prima facie* case of negligence or misconduct on the part of defendant, which must be overcome by proof that the injury was the result of an inevitable accident, or, in other words, an act of God, and not its own negligence or misconduct."

If the preponderance of all the evidence does not establish that the direct, immediate and efficient cause of the injury was an inevitable flood or inundation, the defendant is liable, and although the cause of the loss may have been an act of God, such as a great flood, in the Maumee river, yet, if the defendant unnecessarily exposed the goods of plaintiff to such peril by any culpable or negligent act or omission of its own, it is not excused. The doctrine this instruction announces on this subject as to the burden of proof, presents we think a serious difficulty in the case, and its propriety in view of the evidence and in connection with other instructions given in the cause, is the question we now propose to discuss briefly.

It is familiar doctrine that the law imposes upon the common carrier the obligation of safety, as to goods whilst in his possession, and unless relieved from liability by the act of God, or the public enemy, he is responsible in damages although there may be no actual negligence on his part. Whenever the loss occurs, from

*other* causes, the law raises a presumption against him, upon grounds of public policy. If, therefore, plaintiff shows delivery of his goods to the carrier, and a subsequent loss thereof, he need do no more. This is a sufficient statement, ordinarily, of his cause of action, and a showing, to that effect, is sufficient to make out a *prima facie* case. The *onus probandi* is then on the carrier to bring the case within one or the other of said exemptions. If, in establishing his said defence, facts and circumstances also appear tending to show that his negligence co-operated to produce the damages he must, we think, bear the burden of satisfying the jury, that they did not directly contribute to the damage, and he is not relieved of liability unless he so shows. In other words, when the burden is cast on him, he must make a case in which no negligence of his own appears from the evidence. In that event, he is excused *prima facie*, unless plaintiff then shows, or it appears from the facts in the case, that his negligence causes or co-operates to produce the damage complained of. Whether or not the burden is cast upon the defendant to establish one or the other of said exemptions, which, under the law, relieves him, may depend, we think, upon the state of *plaintiffs'* evidence, or in the language of a text writer of acknowledged authority, on the nature of the case the plaintiff makes out. See Wharton on Neg., secs. 128, 129, 661.

Where, as in the case before us, the act of God appears in the testimony in plaintiffs' behalf, as a cause of the damage, is the *onus*, in that event, on the defendant, and does the presumption of law, thus declared in the instruction, then exist? May the plaintiff, under this state of facts, ignore such exception appearing in the evidence in his behalf, and insist on this legal presumption, whilst proving, at the same time, the existence, in the case, of one of the exemptions, which releases the defendant? The right of recovery must, in

this event, depend, we think, upon the alternatives presented by the evidence, or, in other words, upon the facts and circumstances, and inferences of fact, properly deducible from the evidence itself. This presumption of law does not, in this event, co-exist with proof by plaintiffs of said exceptions, which, under the law, excuse the defendant. This state of the case, which we have been considering upon plaintiffs' evidence, was not changed, we think, at the close of all the evidence, so far, at least, as the question we are considering is involved. That for defendant only confirmed the remarkable character of the flood in question, and tended to show that defendant could not have foreseen the danger, or avoided the damage to the goods by the exercise of reasonable and practicable diligence; whilst that for plaintiffs in rebuttal was, as to this, conflicting, except as to the character of the flood in said river. It may be well to observe, in this connection, that under the ruling of this court, in the case of *Ellet v. Railroad*, 76 Mo., this defence is available to the defendant, under the general issue, and need not be especially and affirmatively set up. But it is said, that upon authority, the rule is otherwise, and that the contrary has been declared in several cases in this state. We will examine these cases briefly.

In the case of *Wolf v. Express Co.*, 43 Mo. 423, the wine, which was the subject of the controversy, arrived at East St. Louis the thirty-first of December and was taken in severe weather from the cars and stored and exposed on a platform for a number of days and thereby became frozen and damaged. The jury were told that the burden of proving that the injury complained of was caused by the act of God rested upon the defendant in the first instance, and then they were further told, that if the defendant permitted said wine to lie carelessly exposed and become damaged thereby, they would find for plaintiff. The instructions were approved, and they

are, we think, correct in that sort of a case. Wagner, J., speaking for this court, says: "After the damages to the goods have been established the burden lies upon the carrier to show they were occasioned by the act or peril which the law recognizes as constituting an exemption, and then it is still competent for the owner to show that the injury might have been avoided by reasonable skill and attention." Again in the case of *Read v. Railroad*, 60 Mo. 206, the same judge says for the court that: "When the loss of the goods is established the burden of the proof devolves upon the carrier to show that it was occasioned by some act which is recognized as an exception. This shown, it is *prima facie* an exoneration and he is not required to go further and prove affirmatively he was guilty of no negligence. The proof of such negligence, if asserted to exist, rests on the other party." The remaining case cited by plaintiffs in this behalf is that of *Pruitt v. Railroad*, 62 Mo. 529. In that case two certain lots of hogs, the subject of the action, were delivered to the carrier for shipment. There was a very unreasonable delay of a month or more in shipping the hogs and the snow storm and cold weather occurred in which the hogs were frozen to death or damaged. The case comments on the difference between the rulings of the New York courts and those of Massachusetts and other courts upon the subject of proximate and remote damages, or damages which the negligence of the carrier concurs with the act of God to produce—and the court say it is well to observe that the latest decisions of this court, referring to *Wolf v. Express Co.*, and *Read v. Railroad*, *supra*, incline to the position of the New York courts, which hold that where the negligence of the carrier concurs in and contributes to the injury the defendant is not exempt from liability on the ground that the immediate damage is occasioned by the act of God or inevitable accident, but there is no discussion as to the burden of proof in the case.

In *Reeves v. Railroad*, 10 Wall. 189, 190, Miller, J., speaking for the Supreme Court of the United States, says: "One of the instances always mentioned by the elementary writers of loss by the act of God is the case of loss by flood and storm. Now when it is shown that the damage resulted from this cause immediately, he is excused. What is to make him liable after this? No question of his negligence arises unless it is made by the other party. It is not necessary for him to prove that the cause was such as releases him and then to prove affirmatively that he did not contribute to it. If, after he has excused himself, by showing the presence of the overpowering cause, it is charged that his negligence contributed to the loss, the proof of this must come from those who assert or rely on it." Upon the question before us the case of *Reeves v. Railroad* is cited in support of the text in the case of *Read v. Railroad*, 60 Mo. 206, and the language of Wagner, J., in the *Read case* and in that of *Wolf v. The Express Co.*, *supra*, is almost identical with that employed by Judge Miller in *Reeves v. Railroad*, *supra*.

The court of appeals in its opinion in this case uses the following language upon this subject: "It is true, that when the evidence for plaintiff shows damage, and at the same time a *vis major*, sufficient in itself to account for the damage, there is no presumption that the negligence of the carrier, rather than the *vis major*, was the efficient cause of the damage. The general rule laid down in instruction number two, might perhaps by amplification have been made more fully and exactly applicable to the case presented by the evidence. But the whole instruction taken together was not, we think, misleading." In this view, we are unable, upon the ground indicated, to concur. We think it erroneous, under the authorities of this court which we have cited, and that it is contradictory and irreconcilable with the,

sixth instruction given at defendant's instance, which is as follows:

"The court further instructs the jury that if the evidence shows that the injury to plaintiffs' goods was caused by a sudden, violent and extraordinary flood, at the city of Toledo, whilst the goods of plaintiffs were in the cars, in the transfer house at Toledo, the verdict of the jury must be for the defendant, unless the plaintiffs have shown that the defendant was guilty of some specific negligence, with reference to the goods, which actively co-operated with the act of God to produce the injury."

This correct instruction for defendant was neutralized and lost to it, by the misleading and contradictory instruction number two, *supra*, given for the plaintiffs. It will be observed that it was not only charged in the petition that defendant negligently permitted the goods of plaintiff to be submerged, but it was also charged that defendant negligently permitted the goods of plaintiff to remain in bulk, wet, after they had been submerged. If this was so, it was a breach of duty, for which defendant would be liable for any aggravation of damages so occasioned. It was the duty of defendant to preserve the property and limit the damages as far as it could by the exercise of all reasonable and practicable diligence.

The fourth instruction given for plaintiffs submits this question to the jury in an instruction which we think is unexceptionable in form and phraseology. But we are not satisfied that there was any sufficient evidence in the case authorizing it. In this behalf the court of appeals say: "There was evidence that the car could have been opened on February 13, but I do not find any evidence tending to show that the goods would have been benefited by opening the car then or that further damage would have been thereby prevented, or how far the goods were injured by not

Davis v. The Wabash, St. Louis & Pacific Ry. Co.

opening the car as soon as it was accessible." If the evidence was thus deficient in these respects, and from our examination we think it is, the instruction should not have been given. James H. Rich, who was an agent of defendant at Toledo, but testifying in plaintiffs' behalf, says: "The floor of the transfer house was covered with water for over two days. We couldn't have gotten into the transfer house for four days after the flood, then found the floor covered with mud and water; it would have been impossible for us to handle goods on the platform without injuring them." To a like effect is the testimony of Doan Blinn, testifying for defendant in this behalf. The evidence shows that defendant put its force at work removing the ice and other obstructions and gained access to the transfer house by the seventeenth of February, whereas, other railroads similarly situated did not reach their warehouses for several days thereafter and further shows that it then forwarded the goods to St. Louis where they arrived February 23. The evidence does not show that this was not as prudent and reasonable a course as the defendant could have adopted under the circumstances or that the damages to the goods were increased any by this course of defendant. The instruction being without evidence sufficient to justify a finding upon this issue, was for that reason we think improperly given.

For these reasons we are of opinion that the judgment of the court of appeals as well as that of the circuit court, should be reversed and the cause remanded for further proceedings in conformity herewith and it is so ordered. All concur.