| 97 | 77 |
| 99 | 341 |

CHARLES W. MORSE

*vs.*

CANADIAN PACIFIC RAILWAY COMPANY.

Penobscot.    Opinion December 9, 1902.

*Railroads.   Common Carrier.   Limitation of Liability.   Evidence.*

1. In this State a common carrier may by agreement limit his common law liability for loss or damage of goods, though not his liability for the consequences of his own negligence.

2. An agreement in a contract of carriage that the carrier shall not be responsible for loss or damage resulting from one of certain specified causes (other than his own negligence) is valid.

3. When the evidence prima facie indicates that the loss or damage of goods during carriage resulted from any of the excepted causes, the burden of proof is on the shipper to show that the loss or damage actually resulted from the carrier's negligence.

4. *Held;* that the evidence prima facie indicates that the death of the plaintiff's horses resulted from causes excepted by agreement in the contract of carriage, and the plaintiff has not shown that the death was caused by any negligence of the carrier.

On report.    Plaintiff nonsuit.

Case to recover the value of two horses belonging to the plaintiff which died while being transported over the defendant's railway between Montreal and Brownville Junction.

It was alleged in the writ and admitted by the defendant that the horses when they left Montreal were apparently in good order and condition, and no question was raised that they died. The plaintiff averred that the injury and death to his horses were caused solely by the gross carelessness of the defendant company.

Other facts appear in the opinion.

*P. H. Gillin and T. B. Towle,* for plaintiff.

*C. F. Woodard,* for defendant.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, POWERS, PEABODY, SPEAR, JJ.

EMERY, J. The Wabash Railroad Company received from the plaintiff's agent at Chicago twenty horses for transportation over its own and connecting railroads to Bangor. In the course of that transportation these horses were received alive and apparently in good condition at Montreal by the Canadian Pacific Railway Company, the defendant, but when the car containing them was delivered by the defendant company to the Bangor and Aroostook Railroad Company at Brownville Junction, two of the horses were found dead in the car. This action is to recover the value of these two horses, and the plaintiff in his declaration has counted upon the common law liability of the defendant company as a common carrier.

The defendant, however, pleaded and put in evidence a special written contract made between the plaintiff and the Wabash Railroad Company, for itself and connecting railroads, to govern the transportation of the twenty horses. In this written contract among other stipulations were these:—(1) that the plaintiff should load and unload the horses and take care of them while being transported at his own risk and expense;—(2) that he should feed, water and take care of his horses at his own expense and risk and to assume all risk of injury and damage that the horses might do to themselves or each other, or which might arise from delay of trains;—(3) that he would not hold the Wabash Company or any connecting railroad company responsible for any loss, damage or injury which might happen to the horses or be sustained by them while being loaded, forwarded, or unloaded, or from suffocation while in the cars, or from any injury caused by over-loading cars, or from fright of animals, or from crowding upon one another. These stipulations were made upon sufficient consideration, and their reasonableness and consequent validity are not questioned; nor is it questioned that the defendant company, operating a connecting railroad, is entitled to the benefit of them.

The first question is whether the evidence shows, prima facie at least, that the death of the two horses was the result of some of the

acts, or omissions or events for which the plaintiff had assumed the responsibility and risk.

We think it does. All the twenty horses had been loaded loose in one car. The plaintiff, himself, testified that the dead horses were badly trampled about the head and neck. .The veterinary testified that the bruises and wounds upon them resulted from being trampled upon by another horse; that they were trampled upon while alive. Another witness testified that the dead horses looked as if they had been pounded and trampled to death. There was no other evidence as to the cause of the death. So far as appears, the death resulted from the plaintiff putting too many horses in one car, or from his leaving them loose in the car, or from some fright of the horses, or from their crowding upon one another; all of which events the plaintiff stipulated should be at his own risk.

In consequence of the above stipulations and evidence, the plaintiff cannot recover unless he shows by evidence that the death of the two horses was in fact caused by the negligence or other fault of the defendant company. This he has so far failed to do. He suggests in argument that the horses were probably thrown down by some collision of cars,—or the too quick starting or stopping of the car, or by some other concussion. There is no evidence, however, of any such event.

The plaintiff further argues that in the absence of evidence upon this point, the causative fault of the defendant company should be presumed, for the reason that the defendant company as common carrier has the burden of proving affirmatively its freedom from such fault. It is well settled, however, that when the common law liability of a common carrier is limited by valid exclusionary stipulations and the loss apparently results from some cause excluded by the stipulations, the burden is then upon the shipper to affirmatively prove that, nevertheless, the loss or damage was in fact caused by the fault of the carrier. For the want of such evidence in this case the plaintiff must be nonsuited.

*Plaintiff nonsuit.*