GULF COAST TRANSPORTATION COMPANY, A CORPORA-
TION, *Plaintiff in Error,* v. C. A. HOWELL AND C. C.
HOWELL, PARTNERS TRADING AND DOING BUSINESS
AS HOWELL & SON, *Defendants in Error.*

Opinion filed Dec. 16, 1915.

1. A Common Carrier may by special arrangement with a shipper
   or by implication through habitual custom and usage agree
   to accept and receive goods for transportation placed along
   its line for shipment at places other than the regularly desig-
   nated places for the reception and delivery of freight.

2. Where goods are lost or injured as a result of the negligent
   act of the carrier, to whom they have been delivered for
   transportation, concurring with an Act of God, the carrier
   cannot maintain that the Act of God was the sole proximate
   cause of the loss of or injury to the goods so as to relieve
   it from liability.

3. The liability of a Common Carrier entrusted with goods for
   transportation is that of an insurer of the goods and it is
   held to a strict accountability for injury to or loss of such
   goods.

4. A declaration which in substance alleges that although the
   goods which were delivered to a carrier for transportation
   were destroyed by an Act of God yet the carrier could have
   foreseen such result and by the exercise of prudence and
   diligence could have protected the goods from injury but
   that it negligently failed to do so, states a cause of action
   against the carrier.

5. Negligence of the shipper concurring with an Act of God in
   the destruction of goods delivered to a carrier for trans-
   portation constitutes no defense by the carrier to an action
   brought against it by the shipper for damages for loss of the
   goods, where the carrier is also guilty of negligence which

VOL. 70, JUNE TERM, 1915.        545

Gulf Coast Trans. Co. v. Howell & Son—Opinion of Court.

concurring with the Act of God resulted in the loss of the goods.

6. Where usage and custom is relied upon to show a constructive delivery of goods to a common carrier for transportation, the burden is upon the party relying upon such custom and usage to clearly and definitely establish it, and where the evidence is uncertain and contradictory, it will be deemed insufficient.

7. Where the claim is made that notwithstanding the intervention of an Act of God, injury to the goods delivered to a common carrier for transportation would not have occurred but for the negligence of the carrier in exposing them, the burden of proof is upon the party asserting such claim.

8. The evidence examined and found to be insufficient to establish a constructive delivery of the goods by the shipper to the carrier for transportation.

Writ of Error to Circuit Court, Lafayette County; M. F. Horne, Judge.

Judgment reversed.

*W. T. Hendry,* for Plaintiff in Error;

*C. C. Howell,* for Defendants in Error.

ELLIS, J.—C. A. Howell and C. C. Howell, partners as Howell & Son, brought suit against the Gulf Coast Transportation Company, a corporation, common carriers of freight for hire upon the Suwannee River, for the alleged negligent failure of the common carrier to accept and transport one hundred and one barrels of rosin belonging to the plaintiffs and which had been delivered

by them at a landing on the river for transportation by the defendant corporation and by reason of which alleged negligent failure of the defendant corporation to accept and transport the freight, a flood which was then rising in the river swept away sixteen barrels of the rosin which were lost to the plaintiff.

The declaration alleged in substance that the defendant corporation was engaged in the business of a common carrier of freight for hire upon the Suwannee River and for such purpose used a certain steamboat which ran between Cedar Keys and Branford, touching at other landings on the river, among which were Old Town. Wannee and Rocky Bluff, which latter landing is in Lafayette county. That the defendant kept no agent, station master nor other servant or agent at Rocky Bluff, but for years previous to the 24th day of April, 1912, it was the constant and habitual custom and usage for persons who desired to ship freight by the defendant's boat to place the freight at the landing at Rocky Bluff and it was the constant and habitual custom and usage of the defendant to accept and transport all freight placed there for transportation. That prior to said date the plaintiffs and their predecessors in business for years had been engaged in the manufacture of rosin and spirits of turpentine and had been for years habitually and constantly accustomed to place rosin at that landing for transportation by the defendant without designating the consignee, place of destination, or givng to the defendant any instructions as to the same, but merely marked on the barrels a symbol, initials or name denoting the consignors, and that the defendant continuously and habitually accepted and carried the rosin so placed for transportation. That when rosin was placed by the plaintiffs at the landing for transporta-

tion marked as aforesaid, the defendant would as the boat made the trip up the river take the rosin to Branford and deliver it to the Atlantic Coast Line Railroad Company, and on the trip down the river would take the rosin and deliver it to the Seaboard Air Line Railway at Wannee or to the Atlantic Coast Line Railroad Company at Old Town. That on the 24th day of April, 1912, the plaintiffs had placed one hundred and one barrels of rosin at the Rocky Bluff landing for transportation by the defendant corporation. The rosin was marked and labeled with the name of the consignors "Howell & Son." That the rosin had been placed there by the plaintiffs for transportation relying upon the custom of the defendant corporation to carry it to Branford, or Wannee or Old Town accordingly as the first boat of the defendant passed up or down the river. That on the 24th day of April, 1912, the water in the Suwannee River was rapidly rising, which fact was known to the defendant. That immediately following that date the water rose to such a height that plaintiffs could not get to Rocky Bluff to protect the rosin from the rapid rise of the river; that during that rise of the river Rocky Bluff landing was totally submerged by water and sixteen barrels of the rosin floated away and were lost. That on the said 24th day of April, 1912, and after the one hundred and one barrels of rosin had been placed by the plaintiffs at the landing for transportation, the steamboat of the defendant passed the landing at Rocky Bluff between noon and sundown on its way down the river to Wannee and Old Town, that the agent of the defendant in charge of the boat knew that the rosin was at the landing for transportation and could have by the exercise of ordinary diligence and care taken it aboard the boat and carried it to Wannee or Old Town as had

been its constant and habitual custom to do, but the defendant carelessly, improperly and negligently failed to stop its boat at the landing and "to accept and receive" and promptly and securely carry the freight therefrom, by reason of which negligence the plaintiff lost the sixteen barrels of rosin which were washed away by the flood.

A demurrer to the declaration was interposed by the defendant, the first, second, third, fifth, sixth, seventh, eighth and ninth grounds of which are argued. These grounds present the following points: 1st. The defendant had no notice from the plaintiffs or "otherwise" that the goods had been placed at the landing for shipment. 2nd. That the declaration did not allege that the barrels of rosin were properly marked with the name of the consignee and destination and it was not alleged that the rosin was ready for delivery when the defendant's steamer passed the landing. 3rd. The name of the consignee and destination of the rosin was not alleged. 5th. That the declaration showed that the alleged negligence of the defendant was not the proximate cause of the loss to the plaintiff. 6th. That the declaration showed the damage resulted from the Act of God. 7th. The declaration showed that the loss resulted from plaintiff's negligence. 8th. That the declaration showed contributory negligence on the part of the plaintiffs, and 9th, That no contract was shown on the defendant's part to carry the goods. That the barrels of rosin were not marked so as to indicate the name of the consignee and destination. That it did not appear that the landing was the "premises of the defendant," nor did the declaration show on the part of the defendant any breach of contract or duty in not carrying the rosin.

VOL. 70, JUNE TERM, 1915.        549

Gulf Coast Trans. Co. v. Howell & Son—Opinion of Court.

The overruling of the demurrer was assigned as the first error.

The theory upon which the declaration is framed is that the defendant as a common carrier of freight by habitual custom and usage agreed with its patrons particularly the plaintiffs that the deposit of goods by the shipper for transportation at Rocky Bluff landing would constitute a delivery to the defendant at that point upon the passage of its first steamer. That such custom constituted an offer by the defendant to receive goods in that way for transportation. That by habitual custom and usage as practiced between the plaintiffs and the defendant, rosin in barrels shipped by the plaintiffs bore no other mark or symbol of ownership than the name or initials of the plaintiffs, and no other shipping directions or instructions were required to be given and that the defendant should upon the passage of its first steamer take the freight and carry it to Wannee and deliver it to the Seaboard Air Line Railway or to Old Town and deliver it to the Atlantic Coast Line Railroad, if the defendant's first passing steamer was going down the river, or in case the steamer should be going up the river, to carry the rosin to Branford and deliver it to the Atlantic Coast Line Railroad. That pursuant to this custom the plaintiffs placed at Rocky Bluff landing one hundred and one barrels of rosin, for transportation by the defendant, marked with the plaintiffs' trading name "Howell and Son" and that on the 24th day of April, 1912, the rosin so placed by the plaintiffs at the landing was ready for shipment. That the defendant's steamer on its way down the river passed the landing on the afternoon of that date, after the rosin was ready for shipment, but negligently failed to carry it, which act of negligence in view of the

rising river contributed to the loss which the plaintiffs sustained. That although the flood in the river was the Act of God, yet the injury would not have occurred but for the defendant's departure from its line of duty.

It is distinctly alleged in the declaration that when the defendant's boat passed the Rocky Bluff landing on the afternoon of April 24th, 1912, the rosin was "ready and waiting" to be carried by the defendant.

That a carrier may by habitual custom and usage agree to accept and receive freight for transportation under the circumstances alleged in the declaration, we think is undoubtedly true. See 4 Elliott on Railroads, §§1411-1413; 5 Am. & Eng. Ency. Law (2nd ed.) 184; 1 Hutchinson on Carriers, §§115-116; Zan Vile on Bailments & Carriers, §440; Ethridge v. Central of Georgia R. Co., 136 Ga. 677, 71 S. E. Rep. 1063; Montgomery & Eufaula R. R. Co. v. Kolb, 73 Ala. 396; Merriam v. Hartford & New Haven R. R. Co., 20 Conn. 354; Pittsburg, C. C. & St. L. R. Co. v. American Tobacco Co., 126 Ky. 582, 104 S. W. Rep. 377; 4 R. C. L. "Carriers", §170; Pratt v. Railway Co., 95 U. S. 43.

If the act of the defendant in passing the landing with its boat after the rosin had been placed and was ready for transportation, was a negligent breach of its duty under the circumstances, then such breach of duty concurring with the rise of water in the river caused the loss, and the defendant could not claim that the Act of God was the sole proximate cause so as to relieve the defendant from liability. In such case the rise of water in the river was not the immediate, direct and efficient cause of the loss, but only a secondary cause which without the defendant's negligence would not have resulted in a loss to the plaintiffs. See Clyde Steamship Co. v. Burrows, 36 Fla. 121, 18

South. Rep. 349; Norris v. Savannah, F. & W. Ry. Co., 23 Fla. 182, 1 South. Rep. 475; Seaboard Air Line Ry. v. Mullin, decided at this term; 4 R. C. L. "Carriers", §183; Wolf v. American Express Co., 43 Mo. 421; Davis v. Wabash, St. L. & P. Ry. Co., 89 Mo. 340, 1 S. W. Rep. 327; Read v. Spaulding, 30 N. Y. 630; New Brunswick Steamboat Co. v. Tiers, 24 N. J. L. 697.

The liability of a common carrier is that of an insurer of goods entrusted to it for transportation and it is held to a strict accountability for injury to or loss of such goods. While an Act of God, as that term is defined in law, may relieve the carrier from liability for the loss of goods in its custody occasioned thereby when the carrier itself is not at fault, it may happen that by the exercise of reasonable diligence and prudence a carrier may foresee the results likely to follow an impending storm or approaching flood, and make such effort and exercise such care and skill as the circumstances seem reasonably to require to protect the goods in its custody for transportation from injury or loss. In the case of Seaboard Air Line Ry. v. Mullin, *supra,* this court rejected the doctrine announced in Green Wheeler Shoe Co. v. Chicago, R. I. & P. R. Co., 130 Iowa 123, 106 N. W. Rep. 498, 5 L. R. A. (N. S.) 882, to the effect that a negligent delay by a common carrier in transporting goods, which are injured by an Act of God before they reach their destination renders the carrier liable, notwithstanding the destructive Act of God could not reasonably have been foreseen at the time of the negligent delay, but adopted what we consider the more reasonable rule which exempts the carrier from liability under such circumstances. The declaration in this case, however, presents a situation different from that in which a delay in trans-

porting goods resulted in placing them in the path of a storm or the way of a flood which could not have been reasonably foreseen at the time of the delay. It presents a situation in which the Act of God was transpiring at the time of the alleged negligent departure by the carrier from its line of duty and the question presented is, could the probable results of that Act of God have been reasonably foreseen by the carrier and by the exercise of reasonable prudence and diligence on its part been guarded against and the goods protected from injury? 1 Hutchinson on Carriers, §292. This question we think, should have been submitted to the jury.

The seventh and eighth grounds of the demurrer raise the point that the plaintiffs' negligence contributed to the loss. Since a common carrier is liable for loss or injury to goods in its custody for transportation, although such loss resulted from an Act of God aided by the carrier's own negligence, he must negative all contributing fault of his own when he relies upon the fault or negligence of the shipper as concurring with the Act of God in producing the loss. A case like this is differentiated from those cases resting primarily upon the defendant's negligence in carrying persons. As stated by Judge McClellan in the case of McCarthy v. Louisville & N. R. Co., 102 Ala. 193, 14 South. Rep. 370, "The unaided, uncontributed to, negligence of the plaintiff producing the injury is a defense; but where there is negligence also on the part of the defendant, without which, notwithstanding plaintiff's fault, the injury would not have happened, this fault of the defendant neutralizes and eviscerates the negligence of the plaintiff as a ground of defense. In the one case, plaintiff's contributory negligence destroys the cause of action; in the other, defendant's concurring neg-

ligence destroys the defense.   4 R. C. L. "Carriers",
§203; Atlantic Coast Line R. Co. v. Rice, 169 Ala. 265,
52 South. Rep. 918.

The declaration does not show that the act of the
plaintiffs in placing the rosin at the landing was such a
negligent act on their part as concurring with the Act of
God, without any aiding negligence of the defendant, re
sutled in the loss.   While it is true that the rosin would
have been carried away in the flood, if the defendant had
not passed the landing with its boat, or if its failure to
take it was not a negligent act on its part under the cir-
cumstances, the declaration expressly alleges that the de-
fendant's failure to carry the rosin was negligence on its
part.   The demurrer was properly overruled.

The defendant filed six pleas as follows:   First, the
general issue; second, that Rocky Bluff landing was not
a regular landing for defendant's boat; that it received
freight from that landing only on notice, and that it had
no notice that the rosin mentioned in the declaration had
been placed at the landing for transportation by defend-
ant, and the rosin was never delivered to defendant for
transportation; third, that the defendant did not receive
the goods for transportation; that they were not marked
in the name of the consignee or point of destination, nor
was defendant requested to receive and  transport the
goods and was not advised by plaintiff that  the goods
were marked and placed at the landing for transportation
by defendant.   The fourth plea in full is as follows:   "4.
And for a fourth plea this defendant says that on the
occasion of the alleged negligence, the recent heavy rains
had swollen the Suwannee River to such a great extent
as to render transportation thereon extremely difficult and
perilous, both to defendant and shippers; that at that date

the waters in said river were rapidly rising; that down stream, between the point where defendant's steamboat was then located and the mouth of the river and the Gulf of Mexico, there was, and is, a railroad trestle spanning said river, and it had been repeatedly observed by the defendant's employees and agents, that when the waters in said river should rise to a great height it was extremely difficult for boats such as ply upon  said river  to pass through said railroad bridge; that on the date alleged the water in said river was rapidly rising as aforesaid, and defendant's servants realized that it was of great importance, not only to the safety of defendant's steamboat, but to the shippers whose freight and goods were then in the possession of the defendant and on defendant's steamboat, that the said steamboat should be run by and below said railroad bridge before the waters in said river should rise to such a great height as to endanger the goods of the defendant and shippers who had placed goods in defendant's lands; that if the  defendant's  servants  and agents had stopped said steamboat at said Rocky Bluff landing and remained there for the period of time necessary to take on board the said lot of 101 barrels of rosin, the waters in said river would have risen to such a great height before they could have reached said railroad bridge with said steamboat that the defendant verily believes that the said steamboat would have been in great danger of being wrecked and the owners of the cargo would have suffered a loss of at least a portion of their goods; that the perilous circumstances were beyond defendant's control and the great freshet then upon said river was the Act of God and beyond the defendant's knowledge or control."    Five, that it was not defendant's duty to stop its boat at the landing for the purpose of taking the rosin

at the time alleged, not having been notified and requested to do so by the plaintiff, that the plaintiffs when they placed the rosin at the landing knew or should have known that it was in danger of being lost on account of the rising waters of the river, that they placed the rosin at the landing at their own risk and its loss was due to their negligence. It is also alleged in this plea that the loss was due to the Act of God; and, sixth, that it had not been the custom and usage of the defendant to receive from the plaintiffs or other shippers rosin, or other goods for transportation at said landing without notice to the defendant that the goods were ready for shipment and were properly marked showing consignee and destination.

The plaintiffs demurred to the second, third, and fifth pleas, replied to the fourth and joined issue upon the first and sixth pleas, and the defendant joined issue upon the plaintiffs' replication to the fourth plea. The demurrer was sustained and the defendant assigns as the second error that "The court erred in sustaining plaintiffs' demurrer to defendant's third, fourth and fifth pleas." There was no demurrer to the fourth plea. The counsel for plaintiff in error probably intended to assign as error the order sustaining the demurrer to the defendant's second, third and fifth pleas. There was no error in sustaining the demurrer. The matters of defense set up in the second and third pleas were admissible under the general issue, while the fifth plea, stripped of its surplusage, and regarded as one setting up the Act of God as a defense was fully covered by the fourth plea.

The fourth, fifth and sixth assignments question the sufficiency of the evidence. The case presents questions of constructive delivery by custom and usage of the plain-

tiffs' goods to the defendant for transportation, and negligence of the defendant in failing to take the goods and carry them under the circumstances; an Act of God threatening and inpending at the time of such failure of the defendant to carry them. The burden of proof on both issues, we think, was upon the plaintiff. On the point of an implied or constructive delivery of the goods by the plaintiffs to the defendant, this court said when this case was here before, that such custom must be clearly and definitely proven, and where the evidence is uncertain and also contradictory, the usage and custom is not established. Gulf Coast Transp. Co. v. Howell, 67 Fla. 508, 65 South. Rep. 661.

Where the claim is made, as in this case, that notwithstanding the intervention of an Act of God, the loss would not have happened but for the negligence of the carrier in unreasonably delaying the transportation of the goods and thus negligently exposing them to the destructive Act of God, the burden of proof is upon him who affirms it. While it is true that the liability of a common carrier for injury or loss of goods intrusted to him for transportation is that of an insurer, he is relieved of such liability where the destruction of or injury to the goods results solely from an Act of God. The carrier's liability in cases where goods are injured or destroyed in his custody by Act of God rests upon his negligence which mingling or concurring with the Act of God resulted in producing the loss. The carrier's liability in such cases is that of a common carrier, and not that of an insurer. The carrier's position is the same as that where he contracts with the shipper against liability for loss or damage to goods from certain causes or accidents. In one case the carrier is relieved from liability by the Act of God, in the other

by his contract with the shipper. In each case the plaintiff alleging negligence of the carrier notwithstanding the excepted causes has the burden of proof. See Mitchell v. United States Express Co., 46 Iowa 214; Muddle v. Stride, 9 Car. & P. (38 E. C. L.) 380; The Glendarroch, 63 L. J. P. 89; Little Rock, Mississippi River & T. Ry. Co. v. Corcoran, 40 Ark. 375; Insurance Co. of North America v. Lake Erie & W. R. Co., 152 Ind. 333, 53 N. E. Rep. 382; Terre Haute & L. R. Co. v. Sherwood, 132 Ind. 129, 31 N. E. Rep. 781; Morse v. Canadian Pac. R. Co., 97 Me. 77, 53 Atl. Rep. 874; Sager v. Portsmouth, S. & P. & E. R. R. Co., 31 Me. 228; Read v. St. Louis, K. C. & N. R. R. Co., 60 Mo. 199; Witting v. St. Louis & S. F. Ry. Co., 101 Mo. 631, 14 S. W. Rep. 743; Lamb v. Camden & A. R. R. & T. Co., 46 N. Y. 271; Cochran v. Dinsmore, 49 N. Y. 249; Long v. Pennsylvania R. Co., 147 Pa. St. 343, 23 Atl. Rep. 459; Schaeffer v. Philadelphia & R. R. R., 168 Pa. St. 209, 31 Atl. Rep. 1088; Hubbard v. Harnden Exp. Co., 10 R. I. 244; Nashville, C. & St. L. R. Co. v. Stone & Haslett, 112 Tenn. 348, 79 S. W. Rep. 1031, Louisville & N. R. Co. v. Manchester Mills, 88 Tenn. 653, 14 S. W. Rep. 314; Schaller v. Chicago & N. W. Ry. Co., 97 Wis. 31, 71 N. W. Rep. 1042; Clark v. Barnwell, 12 How. (U. S.) 272; Railroad Co. v. Reeves, 10 Wall (U. S.) 176; Cau v. Texas & P. R. Co., 194 U. S. 427, 24 Sup. Ct. Rep. 663; The Lennox, 90 Fed. Rep. 308; The Henry B. Hyde, 90 Fed. Rep. 115; The Hindoustan, 67 Fed. Rep. 794; 1 Hutchinson on Carriers, §312. Negligence is presumed only, when certain facts naturally and logically impute the absence of that degree of care required by law. See Railroad v. Mitchell, 11 Heisk. (Tenn.) 400, text 404. The cases touching this point, however, are in irreconcilable

conflict.   It would be useless to attempt a discussion of the more important adjudications upon both sides of the controversy, it would lead to but one result and that is that the conflict is irreconcilable.   We consider that the safer course is to follow the rule laid down in the authorities above cited and hold that where the loss or injury to the goods in the hands of a common carrier for transportation is occasioned by an Act of God the carrier is *prima facie* relieved from all liability and casts upon the shipper the burden of showing liability nevertheless by evidence of the carrier's negligence.   Transportation Company v. Downer, 11 Wall. (U. S.) 129.

A careful examination of the evidence in the case as exhibited by the bill of exceptions fails to show that the second trial of the case developed any clearer proof of the alleged usage and custom of the defendant to stop its boat at Rocky Bluff landing upon its first passage after goods had been placed there by the plaintiff for transportation, than was exhibited upon the record when the case was here before.   In some particulars the evidence for the plaintiffs may be more certain, but that for the defendant is equally so.   Upon the entire record, however, there is in our opinion a lack of that degree of clearness and definiteness as to the existence of the custom which in the former opinion this court said was necessary.   C. A. Howell for the plaintiffs testified that it was the "custom for the boat people to take this rosin on the boat and carry to the railroad company at one of the three points mentioned on their first trip after the rosin was placed there unless there was just a few barrels."   On cross-examination he said:   "I did not know this of my own personal knowledge, I was not always present."   That he knew nothing more about the custom

than he knew when he testified at the first trial. "I say they took it the first trip so far as I knew." Dr. J. M. Mann said: "The custom as to carrying freight was, we always taken it when we found it at the landing and if there was anything for shipment we carried it on our first trip up the river." This witness was at one time in the employment of the defendant as Purser. On cross-examination he said that at the former trial he testified that "It was the general rule to stop and take on the rosin at the first passing of the boat, and if we were loaded we would sometimes pass without taking it on and then later double back and get it." E. S. Gauldin said he had been engaged in the steamboat business on the Suwannee River about twelve years. "Rocky Bluff was a landing from which rosin was carried by my boat; we had a list of the landings all along the river from where we received stuff and delivered to the railroad and delivered stuff there to the landing were kept on our regular way bills and advertising and everything. All of the landings we received freight, but at these especial landings delivered anything shipped to the landings and received anything on the landing to the railroad; that was the custom of shipping at Rocky Bluff at that time. I am familiar with the custom." This witness worked for the defendant at one time. He further testified that it was "always customary for the steamboat company to take the spirits and rosin at the landing away on the trip that they went to the point we shipped to." On cross-examination he said, "I don't know of my own personal knowledge that the defendant company always took the rosin and spirits placed at the landing on their first trip past." He also said that if "It ever failed to carry any rosin we had on the landing on the first trip that way that it was shipped

to I don't know it and I would have known it if it had."
"When it was going the way it was shipped it never
passed there without taking it on."

John H. Peck for the defendant said he was in the
employment of the defendant during the year 1912. He
was Master of the steamer and agent of the company.
He said the custom was to take rosin from the landing
when there was a sufficient amount gathered on the bank
for shipment; that he did not always stop and take on ros-
in at Rocky Bluff landing when there was a carload on
the bank, he used his own discretion about it, "all the
landings the same way." "I did not always stop at the
first passing and take on rosin deposited at Rocky Bluff;
we generally took it off if there was an occasion, but
sometimes passed by and got it going back."

The evidence does not, as we stated, clearly and def-
initely show such a usage or custom as to the carrying
of freight by the defendant from Rocky Bluff landing as
is alleged in the declaration. The plaintiffs therefore
failed to show any contract with the defendant relative
to the shipment of the rosin and showed no actual or con-
structive delivery of it to the defendant for transportation.

As to proof of defendant's negligence in failing to re-
move the rosin under the circumstances, even if it had
been its duty by reason of any contract of shipment to do
so, there is no evidence whatsoever. On the other hand
there was evidence that the flood was an unusual one,
and no evidence that the defendant had any reason to be-
lieve or anticipate the rising of the waters to the great
height which they reached.

The judgment of the court below is reversed.

TAYLOR, C. J., and SHACKLEFORD, COCKRELL and
WHITFIELD, JJ., concur.