[No. 6980. Decided February 11, 1908.]

W. H. Harris, *Respondent*, v. Great Northern Railway Company, *Appellant*.[1]

CARRIERS—OF GOODS—FREIGHT RATES — LIMITATIONS — LIABILITY FOR LOSS. A schedule of published freight rates for household goods, specifying "carrier's liability limited to $5 per hundred pounds in case of loss, so receipted for," contemplates a limitation of liability only when receipt is actually issued; and where another rate was also specified, and nothing was said by the shipper on delivering the goods and no agreement made as to the rate or limitation, and no receipt issued, the carrier's liability on loss of the goods is not limited (FULLERTON, MOUNT, and RUDKIN, JJ., dissenting).

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered April 27, 1907, upon the verdict of a jury rendered in favor of the plaintiff, in an action to recover the value of household goods destroyed by fire during shipment over defendant's railway line. Affirmed.

*M. J. Gordon* and *Charles A. Murray*, for appellant.

*Swanson & Ripley*, for respondent.

Root, J.—This action was begun by the respondent against the appellant to recover $1,454.10, the alleged value of household goods which were shipped by the respondent from Somers, Montana, to Spokane, Washington. Appellant's answer contained two affirmative defenses; one, that at the time the goods were shipped respondent signed an agreement accepting a lower rate for the transportation of said goods and binding himself that, in the event of loss, his recovery should not exceed the valuation of $5 per hundred weight. The second affirmative defense set forth that defendant was engaged in interstate commerce, and kept on file, in its offices at stations along its railway, schedules of rates at which freight would be transported; that during all of the times involved,

[1]Reported in 93 Pac. 908; 96 Pac. 224.

such schedules were on file at Kalispell, Montana, where the contract of shipment was made for the goods in question, there being no station at Somers, Montana, and that said schedules so on file contained its rates for household furniture from Somers, Montana, to Spokane, Washington, one rate being fifty per cent lower than the other, and said lower rate being based upon the condition published in said schedules, that in the event of loss of goods shipped at said lower rate, the shipper should recover for such loss not to exceed $5 per hundred weight; and that while said rates were so on file, the plaintiff, with knowledge of said rates and the conditions pertaining to the respective rates, caused to be shipped the goods described in his complaint from Somers, Montana, to Spokane, Washington, and at the time of delivery of said goods to the appellant for transportation, respondent requested that said goods be shipped at said lower rate, based upon said condition pertaining thereto; that the appellant accepted said goods for transportation upon said condition; that while said goods were in transit, and without any fault on the part of the appellant, they were consumed by fire; that the weight of said goods was forty-two hundred and eighty pounds, and the value, at $5 per hundred weight, $214, which amount appellant offered to pay and tendered into court, together with $4 accrued costs. The case was tried to a jury and resulted in a verdict in favor of the respondent for $1,198.85, for which sum judgment was rendered, and from which judgment this appeal is taken.

In his reply respondent denied that he signed the agreement above mentioned, and the verdict may be taken as a finding by the jury that he did not sign the agreement. Respondent, in his reply, denied that he knew of the schedule of rates being on file, or knew the condition attached. Respondent also testified that all that was said about freight or rates at the time the goods were shipped was that the freight would be paid to Spokane. It appears to be conceded that the jury found that the respondent did not sign any contract of re-

lease. It is urged, however, by appellant that, under the inter-state commerce law, the shipper was obliged to take notice of the published tariff rates of the railway company, and must be charged with the knowledge of the two rates that were provided by said tariff schedule. As to what extent the shipper or intending shipper shall take notice of the posted or published schedule of rates, we are not called upon to decide at this time. From evidence offered by appellant it appears that the schedule reads as follows:

"Household goods not for sale or speculation, individual personal effects, secondhand furniture, stoves, etc., carrier's liability limited to $5 per hundred pounds in case of loss, and so receipted for, car load shipments prepaid guaranteed, less than car load shipments prepaid, first class rate. Household goods, not otherwise specified, not for sale or speculation, car load shipments prepaid or guaranteed, less than car load ship-ments prepaid, first and a half."

The clause therein "and so receipted for," would seem to indicate that the rate therein provided for should apply only where a receipt was actually issued showing the limitation of the liability. It does not appear that respondent received any such receipt or entered into any agreement whatever for a limitation of the carrier's ordinary liability. Where two rates are provided, one in contemplation of the ordinary carrier's liability, and the other a less rate by reason of a limitation of that liability, it would seem, in the absence of an understand-ing or agreement between the shipper and the transportation company, that the carrier would assume the ordinary liability which rests upon a common carrier of goods, and that the usual rate for carrying said goods would be the one which the law implies. In other words, the lesser rate is only available as a matter of special contract, or where it is intended and understood by the shipper and carrier to apply in a given instance. In this case it appears that the respondent delivered his goods to the appellant for shipment in the ordinary man-ner without anything being said, and without any arrange-

ment being made or any agreement being entered into, relative to any limitation of liability or reduction in the freight charges from the usual rate charged for ordinary shipments with the usual carrier's liability. This being true, we think the rulings of the trial court complained of were not erroneous, and that the judgment of that court is sustained by the evidence and the law. It is therefore affirmed.

HADLEY, C. J., CROW, and DUNBAR, JJ., concur.

FULLERTON, J. (dissenting)—I dissent from the conclusion reached in this case. Since there were two published rates fixing different liabilities on the carrier, the shipper had in the first instance the right of selection. But as he did not exercise that right, the duty of making the selection devolved from necessity on the carrier. When, therefore, the carrier in good faith selected the lesser rate and shipped the goods thereunder, the selection, in my opinion, fixed the rights of both of the parties. The carrier should not be permitted on a successful completion of the contract of carriage to collect the higher tariff, nor should the shipper be permitted to collect any more than the limited value in the case of a loss of the goods.

The judgment should be reversed, with instructions to enter a judgment in favor of the appellant.

MOUNT and RUDKIN, JJ., concur with FULLERTON, J.

## ON REHEARING.

[Decided June 25, 1908.]

PER CURIAM.—Since the filing of the opinion in this case a petition for rehearing has been filed. In the former opinion we said:

"Where two rates are provided, one in contemplation of the ordinary carrier's liability, and the other a less rate by reason of a limitation of that liability, it would seem, in the absence of an understanding or agreement between the ship-

per and the transportation company, that the carrier would assume the ordinary liability which rests upon a common carrier of goods, and that the usual rate for carrying said goods would be the one which the law implies.   In other words, the lesser rate is only available as a matter of special contract, or where it is intended and understood by the shipper and carrier to apply in a given instance."

We think this should be modified, in the light of the decisions of the Federal court, to the effect that tariffs of a railway company published as required by the act of Congress become the only legal basis upon which freight and passengers can be transported, and that the shipper is as much obliged to know what the published tariff rates are as is the carrier.  *Texas & Pac. R. Co. v. Abilene Cotton Oil Co.*, 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553 ; *Texas & Pac. R. Co. v. Mugg*, 202 U. S. 242, 26 Sup. Ct. 628, 50 L. Ed. 1011 ; *Southern R. Co. v. Harrison*, 119 Ala. 539, 24 South. 552.   Hence, where the published tariff provides two rates, one with the carrier's ordinary liability and the other a lesser rate by reason of liability being limited, and the shipper makes no selection of rate, it is proper for the carrier to elect which rate shall apply.   We hold, however, that the bill of lading or receipt showing the limited liability must be executed and delivered at the time the carrier accepts the shipment, or promptly mailed in due course of business before a loss occurs.   The carrier cannot wait until after the goods have been destroyed and then choose to make the lower rate with the limited liability apply to the shipment.

This modification does not affect the result in this case. The judgment appealed from is affirmed.