# WESTERN & ATLANTIC RAILROAD COMPANY *v.* HAIG & PURYEAR.

The mere fact that one railroad company had been accustomed, in behalf of a firm of merchants, to switch to its side-track, to be unloaded for the consignees, cars of ice brought to destination by another railroad company, did not make the former liable in damages to the firm merely because of a refusal to continue the practice of switching cars in this way for the firm, with or without notice to it that the practice would be discontinued, where it does not appear that because of the practice, and a belief that it would be continued, the firm did something by reason of which it suffered injury or loss upon a discontinuance of the practice without reasonable notice, and that no such notice was given.

JUNE 22, 1911.

Action for damages.    Before Judge Fite.    Whitfield superior court.    June 11, 1910.

The defendants in error (hereinafter called the plaintiffs) sued the plaintiff in error (hereinafter called the defendant) for actual and punitive damages, making, among other allegations, substantially the following: The plaintiffs have been in the "meat market business" in Dalton since March, 1908, and have shipped to Dalton every week 4 or 5 cars of ice to be used in this business. It had been the practice and custom of the defendant (a railroad corporation under the laws of this State) since the plaintiffs began business in March, 1908, up to July 20, 1909, when cars of ice consigned to the plaintiffs reached Dalton over the Southern Railway, to take the cars and place them on a side or spur-track of the defendant, "in place for unloading at" the warehouse and place of business of the plaintiffs, receiving the sum of $2.00 for each car thus handled. On July 20, 1909, the defendant, "without notice, failed and refused to receive any car or cars from the said Southern Railway, consigned to your petitioners; that defendant failed to give notice a reasonable time before failure to receive said cars, even if it had the right to refuse at all to receive said cars." On July 20, 1909, the defendant received from the Southern Railway a car of ice consigned to the plaintiffs, kept it 16 hours, and refused to deliver it to the plaintiffs, and after the expiration of the 16 hours returned the car to the Southern, "saying that they did not intend to deliver any more freight to petitioners, coming over any other road. This was done through G. W. Orr, defendant's authorized agent at Dalton, Ga. Petitioners allege that by reason of holding this car and failure to deliver same, thirty-six hundred pounds of ice melted before petitioners could haul the same out, to petitioners' damage $20.00. Petitioners were forced to haul said ice to warehouse to save said shipment, which cost them five dollars. The two dollars were tendered, as usual, to said defendant." The remaining allegations of the petition, beginning with paragraph 5, are as follows: "Petitioners further show that on the 22, 24, 28, and 31 days of July, 1909, and 4, 9, 10, 14, 17, 18, 21, 23, 26, and 28th days of August, 1909, and on each of said days, a car of ice was tendered to said defendant, together with the usual and customary freight charges, which said ice was consigned to petitioners and shipped to Dalton from Southern Railway; petitioners' loss on

said cars was hauling said [ice] from Southern depot $5 and loss in weights of ice, occasioned by exposing the same to weather in hauling same, $2.50 on each and every car, to damage of petitioners $105. 6th. Petitioners further show that the said defendant, by its authorized agent aforesaid, maliciously refuses to receive and deliver any freight consigned to petitioners, although the usual and customary freight charges are tendered to said defendant, and although the said defendant receives from other railroads freight consigned to others in said city of Dalton, and to competitors of petitioners, to wit, Bowen Bros., and others; and by reason of said wrong and malicious conduct of said defendant, done for the purpose of annoying and harrassing petitioners and damaging them in their said business, said defendant has injured and damaged petitioners $3,000; said acts being attended with aggravating circumstances both in the acts and the intention, said defendant is liable to punitive damages, and they ask judgment for the same. 7th. Petitioners further show that their said warehouse was built by petitioners on the line of defendant, with consent of defendant, and said defendant is in duty bound to deliver freight to petitioners, and would have done so but for the malice toward petitioners, actual on the part of said agent, trying to vent his malice and personal spleen on petitioners, but pretending to try, by colluding with the competitors of petitioners, to force petitioners to purchase exclusively in Chattanooga, so as to get all the freight for shipment, all of which is fully and well known to the defendant. Wherefore, petitioners pray that process may issue," etc. An amendment was made to the petition, wherein it was alleged that the warehouse referred to "is the brick just in the rear of plaintiffs' meat market and the one just in rear and between the brick warehouse and W. & A. R. R. or close to track of defendant, and just north of freight depot of defendant. Amends par. 5 of petition and allege, the cars mentioned in said paragraph were tendered by the plaintiffs and freight agent of Southern Railway Co., R. C. Craig, by direction of plaintiff, and also by these plaintiffs; said cars were tendered on the arrival of each car, on dates named in said paragraph, and at the place said defendant is accustomed to receive such cars, and had been doing so for years, in the railroad yards in Dalton, Ga.; said tender of cars and charges were made to the agent, G. W. Orr, at Dalton, Ga., and said agent being

authorizéd to receive the same; said usual amount so paid and tendered was two dollars per car." The defendant filed a demurrer to the petition, as follows: "Defendant, the Western & Atlantic Railroad Company, demurs to the petition served upon it in this case, and moves the court to dismiss the same: 1. Defendant demurs to that portion of paragraph three, alleging that plaintiffs' place of business and warehouse situated on the side or spur-track of this defendant, and that defendant had been accustomed to place cars of ice for unloading at said warehouse and place of business, and moves the court to strike the same, because the same does not sufficiently identify what warehouse and place of business as therein referred to, nor does it describe the same so that this defendant can identify the locality in question. 2. Defendant demurs to paragraph five, and moves the court to strike the same, because no actionable breach of duty is therein alleged and no facts giving a right of action are therein set out; it is not alleged who tendered the cars referred to to this defendant, nor where nor when, nor how the tender was made, nor who tendered the usual and customary freight charges, nor to whom nor when nor where such tender was made, nor what amount was so tendered. 3. Defendant demurs to paragraph six, and moves the court to strike the same, because no facts are therein alleged giving plaintiffs any right against this defendant, or aggravating the damages or any right which it may otherwise have, and because the same is immaterial and irrelevant." The demurrer was overruled, and upon the trial of the case a verdict was rendered "in favor of the plaintiff for $125 actual damages, $625 punitive damages." In the bill of exceptions filed by the defendant the order overruling its motion for a new trial, and the order overruling its demurrers, are assigned as error.

　　*Tye, Peeples & Jordan* and *Maddox, McCamy & Shumate,* for plaintiff in error.

　　*W. E. Mann* and *W. C. Martin,* contra.

　　HOLDEN, J. (After stating the foregoing facts.) Haig & Puryear sued the Western & Atlantic Railroad Company for actual and punitive damages for a failure to deliver, for unloading by the plaintiffs, cars of ice shipped to Dalton, Ga., to the plaintiffs over the Southern Railway, on a side-track or spur-track of the defendant near the warehouse and place of business of the plaintiffs. It was alleged that it had been the practice and custom of the defendant,

since March, 1908, down to July 20, 1909, to receive and deliver such cars of ice for $2.00 per car, but that on July 20, 1909, the defendant received from the Southern Railway a car of ice and refused to deliver it on the side-track, but kept it sixteen hours, after which time it returned the car to the Southern Railway, saying that it would not thus deliver any more cars of ice consigned to the plaintiffs not brought to Dalton on the road of the defendant. Plaintiffs were damaged by reason of the ice melting and expense incurred in hauling it. It was further alleged, in par. 5 of the petition (which paragraph is copied in the statement of facts), that on named dates in July and August, 1909, a car of ice consigned to the plaintiffs and brought to Dalton by the Southern Railway was tendered to the defendant, with the customary freight charges, and plaintiffs were damaged because of the ice melting and expense incurred in hauling the same from the Southern depot. The other allegations of the original petition mainly deal with the liability of the defendant for punitive damages. The receipt of the car by the defendant on July 20, 1909, in accordance with its custom, for delivery on its side-track for unloading by the plaintiffs, and its detention, refusal to deliver, and return of the car to the Southern, thereby causing the ice to melt, would give the plaintiffs a right of action for damages. However, proof of the allegations with reference to the actual damages sustained and punitive damages because of a failure to receive from the Southern the cars referred to in the 5th paragraph of the petition, and deliver them for unloading at the side-track of the defendant, would not authorize a recovery of either actual or punitive damages.

Besides being a suit to recover damages with respect to the car of ice received by the defendant on July 20, 1909, the suit was one to recover damages, because it had been the practice and custom of the defendant from March, 1908, to July 20, 1909, to receive cars of ice consigned to the plaintiffs and brought to Dalton by the Southern Railway, and deliver them for unloading on the side-track near the place of business and warehouse of the plaintiffs, and because on named dates in July and August, 1909, the defendant refused to thus receive and deliver cars consigned to the plaintiffs and brought to Dalton by the Southern on these days; especially in view of the fact that the defendant did not give the plaintiffs reasonable notice before these dates of its intention to discontinue

the practice and custom of thus receiving and delivering such cars. When cars of ice consigned to the plaintiffs were brought to Dalton by the Southern, they had reached their destination, and, independently of any rule of the railroad commission of this State, there was no duty on the Western & Atlantic Railroad Company to take these cars and place them on its side-track for unloading by the consignees, where this company was under no duty to do so because of a contract, or on account of being a common carrier with respect to such work, or some other special reason. The defendant did not bring the cars to their destination, and there was no statutory or common-law duty on it to place on its side-track for unloading cars of ice brought to their destination by another railroad. Outside of the rules of the railroad commission, no duty rests on one railroad to take cars brought to their destination by another railroad and switch them at the same point to a side-track of the former, where it is more convenient for the consignee to unload; and if it was in the habit of doing so for one person, it could discontinue the practice, with or without giving notice of an intention to cease service of this kind for such person, where it does not appear that because of the practice, and a belief that it would be continued, such person did something by reason of which he suffered injury or loss upon a discontinuance of the practice without reasonable notice to him that it would be discontinued, and that no such notice was given. The petition alleges that the defendant gave the plaintiffs notice of an intention to discontinue the practice on July 20 or 21st, 1909, but it did not give the plaintiffs reasonable notice of such intention. Without alleging that they sustained loss because of a discontinuance of the practice on account of having done something in reliance on the practice and the belief that it would be continued, the discontinuance of the practice without any notice whatever would give no right of action for damages. There is no allegation that the plaintiffs incurred any expense, or did anything because of any reliance on the practice and custom referred to and a belief that such practice and custom would be continued. The plaintiffs do allege that they built a warehouse "on the line of the defendant, with the consent of defendant," but it is nowhere alleged when or for what reason they built the warehouse, or that there was any contract with the defendant with reference to the erection of the warehouse. There is no statutory or common-law duty on

the defendant to receive cars brought to their destination at Dalton by the Southern and place them on the former's side-track for unloading by the consignee, and it was not alleged that the plaintiffs had any contract with the defendant by virtue of which it was bound to receive and deliver on its side-track cars of ice brought to Dalton by the Southern Railway, nor are there any allegations that the defendant was a common carrier with respect thereto. A practice or custom of the defendant in doing this for the plaintiffs would not make it a common carrier with respect to this service, and the allegations in paragraph 6 of the petition that "defendant receives from other railroads freight consigned to others in said city of Dalton and to competitors of petitioners, to wit, Bowen Bros., and others," were made only to show the plaintiffs' right to punitive damages because defendant "maliciously refuses to receive and deliver" cars of ice consigned to plaintiffs,—the right to recover actual damages being based solely on the contention that the defendant discontinued a practice and custom with the plaintiffs without giving the plaintiffs reasonable notice of its intention to do so. There can be no recovery of punitive damages where there is no right to recover actual or nominal damages. This was not a suit based on discrimination or conspiracy, though there were some general charges of malice in connection with the claim to recover punitive damages. It was not to recover under any rule of the railroad commission. Nor did the allegations show that as to switching in its yard the defendant held itself out as a common carrier, so as to come under Civil Code (1910), §§ 2711, 2712. It is therefore unnecessary to discuss any such matters. The case is decided where the pleader put it—on the practice which had previously existed between the plaintiffs and the railroad. The allegations as to the car-load of ice actually received were not demurred to. The demurrer to the 5th paragraph of the petition, on the ground that "no actionable breach of duty is therein alleged and no facts giving a right of action are therein set out," should have been sustained. After the petition was amended, this paragraph was not subject to the other grounds of the demurrer thereto, nor was the third paragraph subject to the grounds of demurrer urged against it. The demurrer to the sixth paragraph should have been sustained. There were introduced in evidence certain rules of the railroad commission, making it the duty of one railroad to

accept cars from any connecting road tendered it within a specified time and place them at an accessible point on any side-track on its line designated by the "shipper, or consignee at interest." Even if damages other than the penalty provided by these rules for a failure to comply therewith could be recovered in a suit based on a violation of the rules, no recovery could be had in this case because of a violation of these rules by the defendant, as the suit was based on a supposed liability of the defendant independent of any duty imposed·on it by the rules of the railroad commission. *Western & Atlantic Railroad Co.* v. *Exposition Cotton Mills,* 81 *Ga.* 522 (7 S. E. 916, 2 L. R. A. 102). We deem it unnecessary to deal with the assignments of error relating to the charges of the court and the failure of the court to charge, of which complaint is made. Certain demurrers should have been sustained, as hereinbefore indicated; and the verdict should be set aside.

*Judgment reversed. All the Justices concur.*