## ETHRIDGE *v.* CENTRAL OF GEORGIA RAILWAY CO.

1. By a long and continuous custom of receiving and transporting cord-wood left at a point along the main line of its track, not at a regular station, or side or spur-track, a common carrier may obligate itself to continue the custom until it has given reasonable notice that it will be discontinued.

(*a*) Where such custom has been discontinued without reasonable notice given of an intention to do so, the carrier is liable for special damage incurred by a shipper in cutting and cording wood for shipment in reliance upon such custom, upon a refusal by the carrier to transport such wood.

(*b*) In order to recover such damage, it is not obligatory on the shipper to actually deliver the wood thus prepared for transportation at the point on the track where the carrier has been accustomed to receive it, when he has offered to do so and been notified by the carrier that it will not receive for shipment the wood when so delivered.

AUGUST 17, 1911.

Action for damages. Before Judge Lewis. Jones superior court. October 18, 1910.

*Johnson & Johnson,* for plaintiff.

*Ellis & Jordan,* for defendant.

HOLDEN, J. The plaintiff in error sued the defendant in error for damages, making the following allegations: "The Central of Georgia Railway Company is a corporation under the laws of Georgia, a common carrier of freights, doing business in said county previous to and during the years 1906 and 1907 and up to now, and having an office and resident agent therein. That up to the —— day of March, 1907, the defendant company had for many years previous established a continuous custom of receiving for shipment and of shipping cordwood, placed on its right of way in said county, to such points as the shippers desired, the privilege of so placing said wood being extended by said defendant company to all persons, as well as to petitioner, who had prior to said time, to wit, March, 1907, shipped many cars of such wood by such defendant company's railway, which wood had by him been placed on the right of way in said county at points convenient to where the wood was cut, to wit, near the one hundred and seventy-fifth and one hundred and seventy-seventh mile-post on said road. Petitioner, relying on such continuous custom and on his own course of past dealings with said company, cut and corded during the months of August, September, and October, 1906, in said county,

immediately adjacent to the right of way of such railway," a speci-fied number of cords of wood near the mile-posts above mentioned, "with the purpose and intent of hauling the same to the right of way of said·company and shipping the same over said railroad to the city of Macon, a station on said railway." That the value of said pine wood, on the —— day of March, 1907, was and is now $326, and of the said oak wood $120, making·a total of $446. "That after said wood had been cut, ·and while plaintiff was engaged in hauling and piling it on the said defendant company's right of way near the 175th mile-post in said county, he was ordered by said defendant company's agent, then and there in said Jones county, to stop hauling and piling wood on the said right of way, denying to petitioner the right to place said wood, saying that the defendant company would transport no more cordwood except the same be placed at its regular stations or spur-tracks, and that said defend-ant company would not receive it for transportation nor would it transport cordwood from other places than regular stations or spur-tracks. Petitioner further shows that said wood so cut is so sit-uated that to deliver it to the said railroad at a station or spur-track will cost more than it is worth, and that there is no possible way to get it to market without greater cost than its value, except that it be transported by such railroad, though it could be delivered to the said defendant company at the aforesaid point on its right of way for twenty-five cents per cord, which facts were well known to the said defendant company; and that by reason of the said defendant company refusing to so allow petitioner to place the wood on its right of way to be by it so transported, the same has proven to the petitioner a total loss, to wit, in the sum of $446, which the said defendant company should be required to pay to your petitioner, and he prays that he may have a judgment against said defendant for said sum." The plaintiff amended the peti-tion as follows: "Now comes the plaintiff in the above-stated case. and, by leave of the court first had and obtained, amends his declaration by adding after the word "transported," in the 10th line of paragraph 5 of said declaration, the words, "and in not giving to petitioner reasonable notice that the custom of allowing wood to be placed upon their right of way for transportation, not at a spur-track, side-track,. or station, would be discontinued." To

the order of the court sustaining the defendant's general demurrer and dismissing the petition the plaintiff excepted.

There can be no question that a railroad company, as a common carrier, has no right to refuse to receive for transportation, at a station where it is accustomed to receive for shipment goods of a certain class, goods belonging to that class when properly tendered for shipment at the warehouse, or other place at such station, established by custom for receiving for shipment such goods. Railroad companies, as common carriers, have the right to establish reasonable rules and regulations as to the time when and the places at which they will receive goods for transportation. It would hardly be expected that they would establish a custom of receiving for shipment large quantities of cordwood at a station, in warehouses wherein they receive and discharge their ordinary shipments. Cordwood being bulky and shipped for the most part in car-load lots, and frequently in train lots, and being liable to deteriorate but little, if any, in value by exposure to the weather for a short time, it would hardly be expected that common carriers receiving such property for shipment would by contract, or by an established custom, receive it at their regular stations in warehouses used for receiving and discharging other shipments. They would naturally be expected to receive and load, or have loaded, for transportation shipments of this character at points along their side or spur-tracks or the main line. In 4 Elliott on Railroads, § 1411, it is said: "Goods are usually delivered to railroad companies at established stations, and they may refuse to receive them at unusual places. But the delivery may be sufficient although made at an unusual place to an authorized agent, or, under some circumstances, even if made at a place not an established station but where the company has habitually received freight." Also see § 1413 of same volume. In 5 Am. & Eng. Enc. Law, 184, the following text is employed: "Custom of carrier to receive goods at place other than depot.—But such a deposit may amount to a delivery when there is proof of a constant and habitual practice and usage on the part of the carrier to receive goods for transportation when they are deposited for it in a particular place; proof of such a practice is sufficient to show a public offer by the carrier to receive in that way, and to constitute an agreement between it and shippers by which goods, when so deposited, shall be considered as having been

delivered to it without other formality." Also see 1 Hutchinson on Carriers, §§ 115, 118, 122; Moore on Carriers, 98, 136; Schouler's Bailments & Carriers, § 386; Van Zile on Bailments & Carriers, §§ 431, 432; Montgomery &c. Ry. *v.* Kolb, 73 Ala. 396 (49 Am. R. 54). In Van Zile on Bailments & Carriers, § 440, the author thus comments: "Has freight, by the long, uninterrupted usage of the carrier with the particular shipper or with the public, been received and shipped when left at the particular place, by the roadside, or on the platform or dock, or when delivered to the captain or mate? If these questions can be affirmatively answered according to the proofs, then, as we have seen, the delivery is sufficient." Where a railroad company has by a long and continuous custom received for the public cordwood for shipment at a point on the main line not at any station, or spur or side-track, it should give reasonable notice of a discontinuance of the custom. *Durden* v. *So. Ry. Co.*, 2 *Ga. App.* 66 (58 S. E. 299); 4 Dec. Dig. "Carriers," §§ 39, 41. And where such custom has existed, and no notice of an intention to discontinue it has been given, and an individual who has been accustomed to carry cordwood there for shipment in reliance on the custom incurs expense in having cut and corded wood to be hauled to that point for shipment, without notice that the railroad company will not receive it for shipment at such point, he has a right of action to recover any special damage he may sustain upon the refusal of the company to receive the wood at that point for shipment. *Durden* v. *So. Ry. Co.*, supra; *Wilson* v. *Atlanta &c. Ry. Co.*, 82 *Ga.* 386, 390 (9 S. E. 1076); *Atlantic &c. Ry. Co.* v. *Howard Supply Co.*, 125 *Ga.* 478 (54 S. E. 530); *W. & A. R. Co.* v. *Haig*, 136 *Ga.* 494 (71 S. E. 792). In *Georgia Southern & Fla. Ry. Co.* v. *Marchman*, 121 *Ga.* 235 (48 S. E. 961), it was ruled: "As a general rule, a railway company is not bound to receive freight except at stations; but it may, as a result of custom, or as a consequence of an express contract, become obligated to receive freight at a point on its line of railway where there is no station, depot, platform, cars, or agent."

It was not necessary that the plaintiff should haul and deposit on the right of way the wood he had cut, in order for him to have a right of action because of the company's refusal to receive it. Moore on Carriers, 117; Houston &c. R. Co. *v.* Campbell, 91 Tex. 551 (45 S. W. 2, 43 L. R. A. 225 (7), 226). The plaintiff alleged

that he had hauled and deposited on the right of way of the defendant company a part of the wood he had cut and corded for the purpose of having it shipped by the defendant company. It would have been an useless expense to have deposited the rest·of the wood on the right of way, if the company would not receive it there. The refusal to receive the wood was based solely on the ground that it was not deposited at "regular stations ·or spur-tracks" of the defendant company. The court erred in sustaining the general demurrer and dismissing the petition.

　　*Judgment reversed. Beck, J., absent. The other Justices concur.*