[No. 17432.   Department Two.   December 19, 1922.]

UNITED ARTISTS CORPORATION, *Respondent*, v. PUGET
SOUND ELECTRIC RAILWAY, *Appellant*.[1]

CARRIERS (6)—REGULATION—DISCRIMINATION—FILING OF SCHEDULE
OF RATES.  The purpose of Rem. Comp. Stat., § 10339, requiring
carriers to file a schedule of their rates, is to prevent discriminatory
rates, and not to bind shippers by constructive notice of the record.

SAME (38)—OF GOODS—LIMITATIONS—LIABILITY FOR LOSS—RE-
LEASE OF VALUATION BY SHIPPER.  A shipper's knowledge of a carrier's
published schedule of freight rates, giving the shipper the option to
pay a higher rate and recover full value in case of loss of the goods,
or to pay the lower rate and accept the released valuation condition,
together with a mere usage and custom for four years to make ship-
ments at the lower rates, does not create a contract for the released
valuation.

SAME (38)—EFFECT OF CUSTOM.  Released valuation contracts
between a shipper and carrier limiting the liability are not valid
unless entered into before or at the time the goods are accepted;
and evidence of a custom is inadmissible to impose the limitation.

Appeal from a judgment of the superior court for
King county, Brinker, J., entered May 2, 1922, in favor
of the plaintiff, upon sustaining a demurrer to the
answer, in an action for the value of goods lost by a
carrier.  Affirmed.

*James B. Howe* and *Hugh A. Tait*, for appellant.

*Palmer & Askren*, for respondent.

TOLMAN, J.—Respondent, as plaintiff, brought this
action to recover $304, the alleged actual value of cer-
tain personal property delivered to appellant for
transportation, which was lost in transit.  By its
amended answer, appellant pleaded that, in accordance
with the statute, Laws of 1911, p. 538, ch. 117; Rem.
Comp. Stat., § 10339, it had, prior to the shipment in
question, filed its schedule showing rates, charges and

[1]Reported in 211 Pac. 873.

classifications with the public service commission, and that the schedule then in force, among other things, provided:

"Valuation Charges: Rates named in this tariff are dependent upon and vary with the declared or released value of the property, and are based upon property declared to be of, or released to a value not exceeding $50.00 for any shipment of 100 lbs. or less, or not exceeding 50c per pound actual weight for any shipment in excess of 100 lbs. When the declared or released value exceeds that above stated, the rates are 10c greater for each $100.00 or fraction thereof in excess of the value stated above,"

and that notice thereof was duly given as provided by the statute. The answer then proceeds:

"That one D. Costanti is now, and for more than four years prior to June 13th, 1921, has been, engaged in operating a moving picture theater in said city of Tacoma, carrying on such business under the trade name of "Everybody's Theater," and in connection with such business, hired or rented large numbers of moving picture reels or films from plaintiff and other owners or distributors of the same, which were shipped to and returned by said Costanti over defendant's railway line; that during the four years prior to June 13th, 1921, the shipments by said Costanti of said reels or films exceeded an average of two shipments per day; that during said period it was the custom and habit for a driver of defendant to call daily at said Costanti's said theater and pick up all packages of reels ready for shipment and transportation over defendant's line; that such reels so ready for shipment were kept in a room connected with said theater to which defendant's driver was given access, properly addressed to the consignee, and it was at all of said times agreed and understood between said Costanti and defendant that all packages of reels so found in said room ready for shipment should be taken by defendant's said driver for transportation over defendant's railway without further order or request, and without the issuance or

giving of any shipping receipt or bill of lading whatso-
ever; that during all of said period it was the further
agreement, custom and usage for defendant to bill said
Costanti on the first of each calendar month for the
total transportation charges on all such packages of
reels so taken by said driver and transported by de-
fendant during the preceding calendar month, all of
which bills were paid by him.

"That said Costanti had at all of said times actual
knowledge and notice of the said condition in the said
schedule of May 1, 1916, limiting the liability of defend-
ant to a valuation of $50.00 for any package shipped
over its line, and actual knowledge and notice of the
said condition in said schedule of February 12, 1921,
limiting defendant's liability to $50.00 for any ship-
ment of 100 pounds or less, unless the declared or re-
leased value exceeded said sum, and the additional rate
therefor should be paid; that during the whole of said
period of four years immediately prior to June 13,
1921, said Costanti had never declared a value in excess
of $50.00 on any shipment of said reels, and that during
the whole of said period, by custom, usage, understand-
ing and agreement between said Costanti and defend-
ant, all shipments of such reels were made and accepted
upon a released value of $50.00 and that during the
whole of said period it was the uniform and unbroken
custom and usage between said Costanti and defendant
that all shipments of reels made by him over defend-
ant's line were made and accepted at a released value
of $50.00, and were paid for on that basis.

"That the reels or films referred to in plaintiff's
complaint were contained in one package weighing 45
pounds, were left by said Costanti in the room con-
nected with his said theater to be picked up by de-
fendant's driver, and transported by it to plaintiff in
accordance with said custom and usage at a released
valuation of $50.00 for such package, on or about the
12th day of June, 1921, which said package and ship-
ment was on said day picked up by said driver for
transportation to defendant in accordance with said
custom and usage; that under the said schedule of
February 12, 1921, which was in full force and effect

at the time said shipment was made, the rate and charge for transportation of said package, with a released valuation of $50.00, was 70 cents, for which sum, together with the amount due for a large number of other shipments made by said Costanti during the month of June, 1921, he was billed in accordance with said custom and usage, which bill and charge he paid on or about the 19th day of July, 1921.''

Paragraph 5 of the answer admits that $50 is due to the plaintiff and alleges that that sum, together with the accrued costs, has been deposited as a tender in the registry of the court, subject to plaintiff's order. To this amended answer a demurrer was interposed, which was sustained, and the defendant, having elected to stand upon its amended answer, a judgment for the amount claimed was entered against it, from which it has appealed.

It appears to be the theory of the appellant that its compliance with the terms of the statute in filing its schedule, giving notice, etc., makes such schedule and all of its terms absolutely binding upon all shippers. It must be borne in mind, however, that the purpose of the statute is to so bind the carrier as to prevent its making discriminatory rates, and that there is nothing in the act similar to the language used in our recording statutes making such filing notice to all the world, or giving thereto any effect beyond the prevention of discrimination. However, it seems to be conceded that Costanti was the agent of respondent for the purpose of making these shipments, and his knowledge is therefore respondent's knowledge. The question, therefore, is whether the making of shipments over a period of some four years, during which this schedule and preceding schedules containing somewhat similar provisions were in force, shall be taken and held to be an election on the part of the shipper to

release the value of the same to $50, so as to obtain the advantage of the lesser rate.

The law may be considered settled that the shipper's acceptance of a receipt containing a recital that the carrier is not to be held liable beyond a specified sum, which sum is to be accepted as the value of the property, is binding upon him when the carrier's rates are graduated by value. *Wells-Fargo Express Co. v. Neiman-Marcus Co.,* 227 U. S. 469, 57 L. Ed. 600; *Adams Express Co. v. Croninger,* 226 U. S. 491, 57 L. Ed. 314; *Pierce Co. v. Wells-Fargo Express Co.,* 236 U. S. 278, 59 L. Ed. 576. But these authorities do not reach the present question, because here the shipper accepted no such receipt, and is bound, if bound at all, not by anything which occurred at the time of shipment, but by the previous course of dealing. Nor does our own case of *Oregon-Washington R. & Nav. Co. v. Seattle Grain Co.,* 106 Wash. 1, 178 Pac. 648, assist us in this inquiry. There it was held, in effect, that the collection by inadvertence of less than the schedule rate at the time of shipment was no bar to a suit to collect the balance of such rate, and the Federal rule was applied as required by the terms of our statute forbidding discrimination. The holding in *Pacific Fruit & Prod. Co. v. Northern Pac. R. Co.,* 109 Wash. 481, 186 Pac. 852, to the effect that the carrier may not enter into a contract of transportation not expressly authorized in its schedules, is likewise beside the question.

Bearing in mind that the schedule in question gave the shipper the option to pay the higher rate and recover full value in the event of loss, or to pay the lower rate and accept the released valuation condition, and that knowledge thereof on the part of the shipper is alleged, can usage and custom alone create a contract for released valuation? Many cases are cited pro and

con. In *Killmer v. New York Central & H. R. R. Co.*, 100 N. Y. 395, 3 N. E. 293, 53 Am. St. 194, it was held in effect that, where a common carrier fixes an excessive rate which the shipper pays for many years without objection, he must be deemed to have assented to the rate charged as reasonable, and to have voluntarily waived any objections thereto, and cannot thereafter maintain an action to recover back the excess. As we read it, the facts in that case were held to be a mere waiver of what would otherwise have been a legal right, and the case is not an authority upon which to base a holding that usage may create an affirmative contract such as is here claimed.

In *Ethridge v. Central of Georgia R. Co.*, 136 Ga. 677, 71 S. E. 1063, Ann. Cas. 1912D 128, 38 L. R. A. (N. S.) 932, it was held that a common carrier, by a long and continuous custom of receiving and transporting cordwood at a point on its main line not at a regular station, side or spur track, became obligated to continue the custom until it had given reasonable notice of intent to discontinue. This also, we think, fails to reach the point we are now considering.

*Pacific Express Co. v. Black*, 8 Tex. Civ. App. 363, 27 S. W. 830, recognizes the same principle and goes no further than the cases just referred to.

To the same effect is *Merriam v. Hartford etc. R. R. Co.*, 20 Conn. 354, 52 Am. Dec. 344, and other cases cited by appellant not requiring further discussion.

The case of *Shelton v. Merchants' Dispatch Trans. Co.*, 59 N. Y. 258, would be in point, except that, at the time of shipment, bills of lading were issued limiting the carrier's liability, and these were held to control the rights of the parties.

Hence, as we construe them, none of the authorities cited and relied upon by the appellant go sufficiently to the point in issue to be controlling.

Upon the other hand, in *New Jersey Steam Nav. Co. v. Merchants' Bank of Boston*, 47 U. S. 343, 12 L. Ed. 465, it is said:

"But admitting the right thus to restrict his obligation, it by no means follows that he can do so by any act of his own. He is in the exercise of a sort of public office, and has public duties to perform, from which he should not be permitted to exonerate himself without the assent of the parties concerned. And this is not to be implied or inferred from a general notice to the public, limiting his obligation, which may or may not be assented to. He is bound to receive and carry all the goods offered for transportation, subject to all the responsibilities incident to his employment, and is liable to an action in case of refusal. And we agree with the court in the case of *Hollister v. Nowlen*, (19 Wend. 234, 32 Am. Dec. 455), that, if any implication is to be indulged from the delivery of the goods under the general notice, it is as strong that the owner intended to insist upon his rights, and the duties of the carrier, as it is that he assented to their qualification.

"The burden of proof lies on the carrier, and nothing short of an express stipulation by parol or in writing should be permitted to discharge him from duties which the law has annexed to his employment."

In *York Mfg. Co. v. Illinois Central R. Co.*, 70 U. S. 107, 18 L. Ed. 170, it is said:

"The law prescribes the duties and responsibilities of the common carrier. He exercises, in one sense, a public employment, and has duties to the public to perform. Though he may limit his services to the carriage of particular kinds of goods and may prescribe regulations to protect himself against imposition and fraud, and fix a rate of charges proportionate to the magnitude of the risks he may have to encounter, he can make no discrimination between persons, or vary his charges from their condition or character. . . . . He cannot screen himself from liability by any general or special notice, nor can he coerce the owner to yield assent to a limitation of responsibility

by making exorbitant charges when such assent is refused.

"The owner of the goods may rely upon this responsibility imposed by the common law, which can only be restricted and qualified when he expressly stipulates for the restriction and qualification."

To the same effect is *Michigan Central R. Co. v. Mineral Springs Mfg. Co.*, 83 U. S. 318, 21 L. Ed. 297.

The rule is thus stated in 4 R. C. L. 774:

"It may be regarded as the established American rule that a common carrier may not restrict or limit his common law liability by general notices, even though the contents of such notices are brought home to the knowledge of the shipper, but that, in the absence of evidence of his assent to the terms thereof, the implication is as strong that he intended to insist on his rights and the duties of the carrier, as it is that he consented to their limitation or qualification, despite the existence of a few scattered authorities to the contrary."

See, also, *Hayes v. Adams Express Co.*, 73 N. J. L. 105, 62 Atl. 284; *Hill v. Adams Express Co.*, 82 N. J. L. 373, 81 Atl. 859.

In our own case of *Harris v. Great Northern R. Co.*, 48 Wash. 437, 93 Pac. 908, 96 Pac. 224, on rehearing, it was held:

"Hence, where the published tariff provides two rates, one with the carrier's ordinary liability and the other a lesser rate by reason of liability being limited, and the shipper makes no selection of rate, it is proper for the carrier to elect which rate shall apply. We hold, however, that the bill of lading or receipt showing the limited liability must be executed and delivered at the time the carrier accepts the shipment, or promptly mailed in due course of business before a loss occurs. The carrier cannot wait until after the goods have been destroyed and then choose to make the lower rate with the limited liability apply to the shipment."

And so it is generally held that contracts between shipper and carrier fixing the value of property in order to limit the liability of the carrier are not valid unless entered into by the shipper before or at the time the goods were accepted for transportation; and evidence of custom is inadmissible to impose a limitation on the carrier's liability not provided for in the contract of shipment. *McMillan v. American Express Co.*, 123 Iowa 236, 98 N. W. 629; *Powers Mercantile Co. v. Wells-Fargo & Co.*, 93 Minn. 143, 100 N. W. 735; *Baltimore & Ohio R. Co. v. Brady*, 32 Md. 333; *Pittsburg, Cincinnati & St. Louis R. Co. v. Barrett & Walton*, 36 Ohio St. 448; *Illinois Central R. Co. v. Smyser*, 38 Ill. 354.

This rule was well established long prior to the enactment of our statute, and we can find nothing in the statute requiring the filing of tariff schedules and the giving of notice thereof which evinces an intention to change the rule, nor do we perceive that there is any necessity for such a change, since, under the facts pleaded and the authorities cited, the carrier might have charged the higher rate if it had so elected, and its election to charge the lesser rate does not of itself, under the facts pleaded, in anywise affect its liability for loss, in the absence of an express contract with the shipper.

The judgment appealed from is affirmed.

PARKER, C. J., and MAIN, J., concur.